## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF PHILADELPHIA; CHERELLE PARKER, Mayor of Philadelphia, in her official capacity; LAWRENCE KRASNER, District Attorney of Philadelphia, in his official capacity; RENEE GARCIA, City Solicitor of Philadelphia, in her official capacity,<br><br>Defendants. | **COMPLAINT**<br><br><br>Case No.: 2:26-cv-4208 |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

### INTRODUCTION

1.      For centuries, the Supreme Court has repeatedly recognized that states have no authority whatsoever to regulate the Federal Government's operations. *United States v. Washington*, 596 U.S. 832, 838–39 (2022) (The Supremacy Clause "prohibit[s] state laws that either regulat[e] the United States directly or discriminat[e] against the Federal Government…."); *Mayo v. United States*, 319 U.S. 441, 445 (1943) (The Supremacy Clause renders "the activities of the Federal Government . . . free from regulation by any state."); *In re Neagle*, 135 U.S. 1, 75 (1890); *Tennessee v. Davis*, 100 U.S. 257, 262–63 (1879); *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427 (1819). A state law that directly regulates the Federal Government's operations is straightforwardly invalid. *See, e.g.*, *United States v. California*, 173 F.4th 1060, 1067 (9th Cir. 2026) (granting preliminary injunction against state law because states are forbidden "from

1

regulating the federal government *qua* government and from controlling federal governmental functions in any manner and to any degree"); *CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315, 320 (3d Cir. 2025) ("Intergovernmental immunity shields the federal government from direct or discriminatory state regulation.").

2.      Despite that well-established precedent, Philadelphia—the very city where the principles of federal sovereignty and supremacy were first established—recently enacted a bill that purports to do exactly what constitutional law says it cannot: subject federal officers and agencies to criminal and civil liability, respectively, through laws that seek to regulate how those officers carry out their federal duties.

3.      On April 23, 2026, the Philadelphia City Council passed Bill No. 260060 (hereinafter the "Bill" or "Bill 260060"). The provisions of the Bill challenged herein—including Section 2, codified at Phila. Code §§ 10-843, 10-844, 10-845, and 10-846—will take effect 60 days after it was adopted on May 8, 2026, and are blatantly unconstitutional.[1]

4.      Section 2, §§ 10-843, 10-844, 10-845, and 10-846 seek to regulate federal agents when executing their federal duties by applying municipal-law standards governing officers' use of facial coverings and identification of federal officers and vehicles. Such provisions violate the principles of intergovernmental immunity that flow from the Supremacy Clause of the U.S. Constitution.

5.      Specifically, these provisions purport to regulate: (i) what federal officers must and must not wear within the City of Philadelphia when carrying out their official duties, including face coverings and personal identifiers; (ii) whether and how federal officers identify themselves

---

[1] The United States has grave concerns over the constitutionality of other parts of the Bill as well as other components of the "ICE Out" legislation and reserves the right to bring additional challenges in the future.

to the public; (iii) whether and how federal officers identify themselves to subjects of arrest, holding, or detention; and (iv) federal officers' use of government vehicles. A violation of those provisions by a federal officer is a criminal offense, punishable by jail time, and may also give rise to civil liability for the employing agency. Notably, the Bill provides only limited exceptions— but federal agents and agencies are not eligible for these exceptions unless the federal agency implements and publicly posts a written policy meeting the City's own standards. These challenged sections thus violate the principles of intergovernmental immunity contained within the Supremacy Clause of the U.S. Constitution.

6.      On April 26, 2026, the Ninth Circuit unanimously granted a preliminary injunction against a materially similar California law requiring federal law enforcement officers to "visibly display identification." *California*, 173 F.4th at 1063. Because California's law "expressly applie[d] to federal officers," sought "to control their conduct in performing law enforcement operations," "purport[ed] to override the federal government's power to determine whether, how, and when to publicly identify its officers," and thereby "aim[ed] to regulate the manner and conditions under which federal agents can enforce federal law," the Ninth Circuit easily concluded that it was likely "barred by intergovernmental immunity" under the Supremacy Clause. *Id.* at 1067-68. Moreover, the district court held that California's mask law likely unlawfully violated the intergovernmental immunity doctrine as it discriminated against the Federal Government. *See United States v. California*, 819 F. Supp. 3d 1109, 1137 (C.D. Cal. 2026).

7.      Philadelphia's Bill similarly seeks to regulate the conduct of federal law enforcement officers within Philadelphia by subjecting them to criminal penalties and their agencies to civil penalties for complying with federal laws and policies that govern their official duties and actions. Such an ordinance also undermines the principles of federalism that underlie

our entire constitutional order by seeking to prevent effective federal law enforcement within Philadelphia. Such actions are unconstitutional and harm the citizens of both the United States as a whole and of Philadelphia, a municipality within a state subject to the Supremacy Clause. U.S. Const. art. VI, cl. 2.

## JURISDICTION AND VENUE

8.    The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

9.    Venue is proper under 28 U.S.C. § 1391(b)(1) because all defendants reside in this district.

10.    The Court has the authority to provide the relief requested under 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers.

## PARTIES

11.    Plaintiff, the United States of America, enforces federal laws through its Executive agencies. Those agencies include but are not limited to the Department of Justice and its component law enforcement agencies—e.g., the Federal Bureau of Investigation (FBI) and the Drug Enforcement Administration (DEA)—and the Department of Homeland Security (DHS) and its component law enforcement agencies—e.g., U.S. Immigration and Customs Enforcement (ICE) (which includes Homeland Security Investigations (HSI)) and U.S. Customs and Border Protection (CBP).

12.    Defendant City of Philadelphia is a municipality within the Commonwealth of Pennsylvania.

13.    Defendant Cherelle Parker is the Mayor of Philadelphia and is responsible for overseeing the City of Philadelphia. She is being sued in her official capacity.

14.    Defendant Lawrence Krasner, District Attorney, leads Philadelphia's District Attorney's Office, which is charged with investigating and enforcing the challenged provisions of the Bill. He is being sued in his official capacity.

15.    Defendant Renee Garcia is the Solicitor of Philadelphia, and is responsible for legally advising city officials within the City of Philadelphia and enforcing the challenged provisions of the Bill. She is being sued in her official capacity.

## LEGAL AND FACTUAL BACKGROUND

## THE SUPREMACY CLAUSE AND FEDERAL LAW ENFORCEMENT

16.    The Supremacy Clause of the United States Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The Supremacy Clause incorporates principles of intergovernmental immunity, and thus, a state enactment is invalid if it "regulat[es] the United States directly or discriminat[es] against the Federal Government or those with whom it deals." *Washington*, 596 U.S. at 838 (citation omitted).

17.    The President has a constitutional duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II § 3.

18.    Subordinate officers in various federal agencies assist the President in discharging that duty. *See Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203–04 (2020); *see also Davis*, 100 U.S. at 263 (stating that the Federal Government "can act only through its officers and agents").

19.    Federal law empowers the Executive to provide for and dictate the conduct of federal law enforcement officers in carrying out their official duties. *See, e.g.*, 5 U.S.C. § 301

(authorizing the head of an Executive or military department to "prescribe regulations for the government of his department [and] the conduct of its employees"); 28 U.S.C. § 509 (vesting all functions of other officers, agencies, and employees of the Department of Justice in the Attorney General); 8 U.S.C. § 1103(a)(2) (giving the Secretary of Homeland Security the power to "control, direct[], and supervis[e]" all DHS employees).

20.    Federal law similarly empowers the Executive to provide for and dictate federal law enforcement officers' uniforms and equipment, along with vehicle identification requirements, when carrying out their official duties. *See, e.g.*, *id.*; 5 U.S.C. § 5901 (directing the head of each federal agency to furnish its employees a uniform or an allowance for a uniform); 29 U.S.C. § 668 (requiring heads of federal agencies to, as part of their occupational safety and health programs, acquire, maintain, and require the use of safety equipment, personal protective equipment, and devices reasonably necessary to protect employees); 40 U.S.C. § 609 (noting that regulations "may provide for exemptions when conspicuous identification would interfere with the purpose for which a vehicle is acquired and used").

21.    Because the authority to execute the laws "extend[s] over the whole territory of the Union, acting upon the States and upon the people of the States," federal officers and agents "must act within the States." *Davis*, 100 U.S. at 263. Accordingly, federal law enforcement officers carry out their duties within the several states, including Pennsylvania.

22.    For example, the DEA enforces our Nation's controlled substances laws. *See generally* The Controlled Substances Act (CSA), *codified as amended at* 21 U.S.C. §§ 801, *et seq.*

23.    In carrying out that mission, the DEA investigates and aids in the prosecution of major violators of controlled substances laws; seizes and forfeits assets derived from illicit drug

trafficking; and manages a national drug intelligence program in cooperation with federal, state, local, and foreign officials. *See* 28 C.F.R. § 0.100–0.101.[2]

24.     As another example, the FBI is charged with rooting out violent crime, defending the homeland against terrorist attacks, and investigating and combating cybercrime, among other duties. It carries out this mission through numerous operations throughout the country and in partnership with federal, state, local, and foreign officials. *See id.* § 0.85.[3]

25.     And as another example, DHS, through ICE and CBP, is principally responsible for enforcing our Nation's immigration laws, including the Immigration and Nationality Act (INA), which, pursuant to Congress's power to "establish a uniform Rule of Naturalization," U.S. Const. art. I § 8, cl. 4, make up the framework for the "governance of immigration and alien status," *see Arizona v. United States*, 567 U.S. 387, 395 (2012).

26.     The INA confers upon the Executive Branch broad authority to inspect, investigate, arrest, detain, and remove aliens who are unlawfully present in the United States. *See, e.g.*, 8 U.S.C. §§ 1182, 1225–29a, 1231. As part of those enforcement efforts, DHS, through HSI, also investigates transnational crime and threats, including incidents of human smuggling and human trafficking.  *See* 8 U.S.C. §§ 1324, 1232.

### PHILADELPHIA CITY COUNCIL BILL 260060

27.     On April 23, 2026, Philadelphia City Council enacted Bill 260060 (**Exhibit A**).

28.     On May 7, 2026, Mayor Cherelle Parker declined to sign Bill 260060 but did not disapprove it. Despite the lack of signature, the Bill became law on May 8, 2026.[4] The provisions

---

[2] *See also* DEA, Mission Statement, https://perma.cc/99W4-98GL.
[3] *See also* FBI, About, Mission and Priorities, https://www.fbi.gov/about/mission (last visited June 3, 2026).
[4] Section 2-202 of the Philadelphia Home Rule Charter provides that "Every ordinance shall, before it takes effect, be certified to the Mayor for approval. The Mayor shall sign the ordinance

of Bill 260060 challenged herein are set to take effect on July 7, 2026, sixty (60) days after it was adopted, as stated in Section 3 of the Bill. This Bill amends Title 10 of the Philadelphia Code, titled "Regulation of Individual Conduct and Activity," to prohibit "law enforcement officers from concealing their identity" and "require[s] officers to visibly display their badge and other official identifying information." Bill 260060, Preamble. The Bill also prohibits "the impersonation of law enforcement officers," and "provides for civil and criminal enforcement of violations, under certain terms and conditions." *Id*.

29.     The Bill purports to apply these new rules to federal law enforcement officers by defining "Law Enforcement Officer" as any "peace officer" as defined in 18 Pa. C.S. § 501,[5] explicitly "including but not limited to local, state or federal officers." Phila. Code §§ 10-843(1)(a), 10-844(1)(a), 10-845(1)(a), 10-846(1)(a).

<u>Criminal Liability</u>

30.     Section 2 amends Title 10 of the Philadelphia Code to include Chapter 10-800, by adding § 10-843, titled "Criminal Concealment by a Law Enforcement Officer."

31.     Under § 10-843(2), "a law enforcement officer is guilty of criminal concealment if the law enforcement officer, while performing duties and interacting with the public:

> (a) Wears a mask, facial covering, disguise or any other garment that obscures the identity of the law enforcement officer;
> (b) Intentionally obscures, covers, removes or otherwise conceals a badge, tag, label or other identifying information required to be visibly displayed;

---

if the Mayor approves it, whereupon it shall become law. If the Mayor disapproves it, the Mayor shall return it to the Council with the reasons for the Mayor's disapproval at the first meeting thereof held not less than ten days after the Mayor receives it. . . . If the Mayor does not return the ordinance within the time required, it shall become law without the Mayor's approval."

[5] "Any person who by virtue of his office or public employment is vested by law with a duty to maintain public order or to make arrests for offenses, whether that duty extends to all offenses or is limited to specific offenses, or any person on active State duty pursuant to 51 Pa.C.S. § 508 (relating to active duty for emergency). The term 'peace officer' shall also include any member of any park police department of any county of the third class."

(c) Uses a vehicle in the course of official duties that does not contain clear identifying information for the entity that employs the law enforcement officer that is visible to individuals other than such law enforcement officer; or
(d) Fails to identify themselves to a subject of arrest, holding or detention or to provide identifying information upon request to the subject of an arrest after an arrest has been made."

*Id.* § 10-843(2).

32.     Section 10-843(2) purports to regulate what federal officers may and may not wear in Philadelphia when carrying out their official duties, including how they must be identified and when they may wear facial coverings. § 10-843(2)(a), (b). Subsection 2 thus imposes Philadelphia's own municipal facial covering and identification standards on federal officers executing their official duties within the City. The facial coverings requirement includes only limited exceptions, such as wearing "a medical-grade mask or respirator necessary to prevent the transmission of airborne illnesses" or "for a religious purpose" or when "safeguard[ing] the face or head" or when "designed to protect against smoke or hazardous conditions during fire response or similar emergencies." § 10-843(3)(a).

33.     Section 10-843 also purports to regulate federal law enforcement vehicles, prohibiting law enforcement officers from using "a vehicle in the course of official duties that does not contain clear identifying information for the entity that employs the law enforcement officer that is visible to individuals other than such law enforcement officer." § 10-843(2)(c). Such a requirement imposes Philadelphia's own municipal identification standards on federal law enforcement vehicles used in executing official duties within the City.

34.     Further, § 10-843(2) also purports to regulate federal officers by requiring that they "identify themselves to a subject of arrest, holding, or detention" and that federal officers must "provide identifying information upon request to the subject of an arrest after an arrest has been made." § 10-843(2)(d). Such a requirement imposes Philadelphia's own municipal identification

9

standards on federal agents in executing their official duties within the City.

35.     Aside from the limited facial covering exceptions, which do not cover undercover operations, or address doxxing concerns or other contexts where the Federal Government has deemed facial coverings operationally necessary, a law enforcement officer would not be found to violate subsection (2) "if the law enforcement officer is employed by a law enforcement agency that maintains and publicly posts a written policy pursuant to Section 10-848." § 10-843(3)(b).

36.     Section 10-843 provides that violations "shall be a summary offense" and convicted violators "shall be sentenced to pay a fine pursuant to Philadelphia Code § 1-109 per incident or undergo imprisonment for a period not exceeding ninety (90) days, or both, in addition to any other penalties imposed." § 10-843(4).

37.     Section 10-843 authorizes the District Attorney to investigate and criminally prosecute violations. § 10-843(5).

38.     Section 2 of the Bill also adds § 10-844, titled, "Visible Badge Requirement," which imposes four similar requirements to some of those in § 10-843. Under § 10-844, law enforcement officers are "guilty of criminal concealment if the law enforcement officer, while performing official duties and interacting with the public, fails to:

> (a) Visibly display a badge, tag or label clearly identifying the name, rank, and entity that employs that law enforcement officer at all times;
> (b) Identify themselves to a subject of arrest, holding or detention;
> (c) Produce a badge, tag or label upon request; or
> (d) Use a vehicle that contains clear identifying information for the entity that employs the law enforcement officer which is visible to individuals other than such law enforcement officer."

§ 10-844(2).

39.     Section 10-844(2) purports to regulate what federal officers may and may not wear within Philadelphia when carrying out their official duties, including how they must be identified.

10

§ 10-844(2)(a). Subsection 2 thus imposes Philadelphia's own identification standards on federal officers executing their official duties within the City.

40.    Section 10-844(2) also purports to regulate federal law enforcement vehicles, requiring law enforcement officers "[u]se a vehicle that contains clear identifying information for the entity that employs the law enforcement officer that is visible to individuals other than such law enforcement officer." § 10-844(2)(d). Such a requirement imposes Philadelphia's own municipal identification standards on federal law enforcement vehicles used in executing official duties within the City.

41.    Further, § 10-844(2) also regulates federal officers by requiring that they "[i]dentify themselves to a subject of arrest, holding, or detention" and that federal officers must "[p]roduce a badge, tag or label upon request." § 10-843(2)(b), (c). Such a requirement imposes Philadelphia's own municipal identification standards on federal agents in executing their official duties within the City.

42.    The only stated exception to § 10-844(2) applies "if the law enforcement officer is employed by a law enforcement agency that maintains and publicly posts a written policy pursuant to Section 10-848." § 10-844(3).

43.    Section 10-844 provides that violations "shall be a summary offense" and convicted violators "shall be sentenced to pay a fine pursuant to Philadelphia Code § 1-109 per incident or undergo imprisonment for a period not exceeding ninety (90) days, or both, in addition to any other penalties imposed." § 10-843(4).

44.    Section 10-844 authorizes the District Attorney to investigate and criminally prosecute violations. § 10-844(5).

Civil Liability

45.    Section 2 of the Bill also adds § 10-845, titled "Tortious Concealment by a Law Enforcement Officer," which is the civil analogue to § 10-843. Under § 10-845, "[a]ny person arrested in the City of Philadelphia has the right to know the identity of the arresting officer" and "a law enforcement officer is liable for tortious concealment if the law enforcement officer, while performing official duties and interacting with the public,

> (a) Wears a mask, facial covering, disguise or any other garment that obscures the identity of the law enforcement officer, or fails to identify themselves to a subject of arrest, holding or detention;
> (b) Intentionally obscures, covers, removes or otherwise conceals a badge, tag, label or other identifying information required to be visibly displayed; or
> (c) Uses a vehicle in the course of official duties that does not contain clear identifying information for the entity that employs the law enforcement officer which is visible to individuals other than such law enforcement officer."

§ 10-845(2).

46.    Section 10-845(2) purports to regulate what federal officers may and may not wear within Philadelphia when carrying out their official duties, including how they must be identified and when they may wear facial coverings. § 10-845(2)(a), (b). Subsection 2 thus imposes Philadelphia's own municipal facial covering and identification standards on federal officers executing their official duties within the City. As in § 10-843, the facial coverings requirement includes only limited exceptions, such as wearing "a medical-grade mask or respirator necessary to prevent the transmission of airborne illnesses" or "for a religious purpose" or when "safeguard[ing] the face or head" or when "designed to protect against smoke or hazardous conditions during fire response or similar emergencies." § 10-845(3)(a).

47.    Further, § 10-845(2) purports to regulate federal officers by requiring that they "identify themselves to a subject of arrest, holding or detention." § 10-845(2)(a). Such a requirement imposes Philadelphia's own municipal standards of conduct on federal agents in

12

executing their official duties within the City.

48.    Section 10-845 also purports to regulate federal law enforcement vehicles, prohibiting law enforcement officers from using "a vehicle in the course of official duties that does not contain clear identifying information for the entity that employs the law enforcement officer which is visible to individuals other than such law enforcement officer." § 10-845(2)(c). Such a requirement imposes Philadelphia's own municipal identification standards on federal law enforcement vehicles used in executing official duties within the City.

49.    Aside from the limited facial covering exceptions, which do not cover undercover operations, a law enforcement officer would not be found to violate subsection (2) "if the law enforcement officer is employed by a law enforcement agency that maintains and publicly posts a written policy pursuant to Section 10-848." § 10-845(3)(b).

50.    Section 10-845(4) provides that "[t]he City Solicitor or any individual aggrieved by a violation of this Section or any entity of a member aggrieved by a violation of this Section may bring a civil action . . . against a . . . department or agency that employs a person violating this Section." The statute of limitations for such an action "shall be three (3) years from the date the complainant knew or should have known of the alleged violation." § 10-845(4).

51.    Section 10-845 authorizes various remedies to a plaintiff in such an action, including a cease-and-desist order, compensatory or punitive damages, attorney fees or court costs, payment of a fine up to two thousand dollars ($2,000) for each violation, and other equitable relief. § 10-845(5).

52.    Similarly, Section 2 of the Bill includes § 10-846, titled, "Tortious Failure to Make an Identifying Badge Visible," which is the civil analogue to § 10-844. Under § 10-846, law enforcement officers are "liable for tortious failure to make an identifying badge visible if the law

enforcement officer, while performing official duties and interacting with the public, fails to:

> (a) Visibly display a badge, tag or label clearly identifying the name, rank, and entity that employs that law enforcement officer at all times;
> (b) Produce a badge, tag or label upon request; or
> (c) Use a vehicle that contains clear identifying information for the entity that employs the law enforcement officer which is visible to individuals other than such law enforcement officer."

§ 10-846(2).

53.     Section 10-846(2) purports to regulate what federal officers may and may not wear within Philadelphia when carrying out their official duties, including how they must be identified. § 10-846(2)(a). Subsection 2 thus imposes Philadelphia's own identification standards on federal officers executing their official duties within the City.

54.     Further, § 10-846(2) also regulates federal officers by requiring that they must "[p]roduce a badge, tag or label upon request." § 10-846(2)(b). Such a requirement imposes Philadelphia's own municipal identification standards on federal agents in executing their official duties within the City.

55.     Section 10-846(2) purports to regulate federal law enforcement vehicles, requiring law enforcement officers "[u]se a vehicle that contains clear identifying information for the entity that employs the law enforcement officer which is visible to individuals other than such law enforcement officer." § 10-846(2)(c). Such a requirement likewise imposes Philadelphia's own municipal identification standards on federal law enforcement vehicles used in executing official duties within the City.

56.     The only stated exception to § 10-846(2) applies if the law enforcement officer is "employed by a law enforcement agency that maintains and publicly posts a written policy pursuant to Section 10-848." § 10-846(3).

57.     Section 10-846(4) provides that "[t]he City Solicitor or any individual aggrieved

14

by a violation of this Section or any entity of a member aggrieved by a violation of this Section may bring a civil action . . . against a . . . department or agency that employs a person violating this Section." The statute of limitations for such an action "shall be three (3) years from the date the complainant knew or should have known of the alleged violation." § 10-846(4).

58.     Section 10-846 authorizes various remedies to a plaintiff in such an action, including a cease-and-desist order, payment of compensatory or punitive damages, attorney fees or court costs, payment of a fine up to two thousand dollars ($2,000) for each violation, and other equitable relief. § 10-846(5).

<u>Policy Requirements</u>

59.     Section 2 also purports to regulate federal law enforcement agencies when operating within Philadelphia and carrying out their official duties by conditioning relief from criminal and civil liability on the requirement that law enforcement agencies maintain and publicly post a written policy compliant with municipal standards. Section 2 amends Title 10 of the Philadelphia Code to include § 10-848, titled, "Law Enforcement Agency Policies." Under § 10-848(1), "[a] law enforcement agency operating in Philadelphia shall maintain and publicly post a written policy prohibiting officers from concealing their identity, and requiring officers to visibly display their badge and other official identifying information, when performing enforcement duties." Further, the policy must include, but is not limited to:

(a) "A purpose statement affirming the agency's commitment to all of the following:
(1) Transparency, accountability, and public trust;
(2) Restricting the use of facial coverings to specific, clearly defined, and limited circumstances;
(3) Restricting situations in which officers do not visibly display identification to specific, clearly defined, and limited circumstances.
(b) A requirement that all law enforcement officers not use a facial covering when performing their duties, subject to a list of narrowly tailored exemptions for the following:
(1) Active undercover operations or assignments authorized by supervising

15

personnel or court order.

(2) Operations where personal protective gear is required for physical safety.

(3) Protection of identity during prosecution.

(4) Exigent circumstances, involving an imminent danger to persons or property, or the escape of a perpetrator, or the destruction of evidence, including if the officer is responding to those circumstances while off-duty.

(5) When there is a specific, articulable, and particularized reason to believe identification would pose a danger to the physical safety of the officer.

(6) Applicable law governing occupational health and safety or reasonable accommodations."

§ 10-848(2).

60.     Mayor Parker's office stated that the decision not to sign Bill 260060 was made upon receiving a letter from Philadelphia City Solicitor Garcia which expressed concerns that the Bill poses "significant legal problems, primarily concerning the authority of the City to regulate the conduct of federal officers when carrying out their duties under federal law."[6] City Solicitor Garcia also referenced the recent Ninth Circuit decision in *United States v. California*, 173 F.4th 1060 (9th Cir. 2026), that granted a preliminary injunction against a similar identification law, finding it likely unconstitutional. The City Solicitor Garcia's letter also stated,

> "As a general matter, the Mayor's signature on a bill reflects approval of its contents. *See* Charter § 2-202 ('The Mayor shall sign the ordinance if the Mayor approves it…'). Your signature on the Bill would likely signal not only support for the policy positions underlying the legislation, but also the Administration's commitment to enforce the Bill. Given the Bill's significant legal and operational challenges, signing this Bill, in my view, would send an in inaccurate signal to the public that the Administration can legally and practically enforce the Bill."

*Supra* note 6. Despite this recommendation, even though the Mayor did not sign the Bill, it still passed because she did not disapprove it. *See supra* note 4.

61.     Philadelphia has indicated its impending intent to enforce its laws against federal

---

[6] NBC10 PHILADELPHIA: Mayor Parker signs all 'ICE Out' bills in Philly except for mask ban: Mayor Cherelle Parker signed six of the seven bills that would limit ICE operations in Philadelphia, https://www.nbcphiladelphia.com/news/local/mayor-parker-signs-all-ice-out-bills-in-philly-except-for-mask-ban/4398543/ (last visited June 4, 2026).

16

officers and agents. For example, District Attorney Lawrence Krasner said ICE agents who break the law in Philadelphia will be arrested, stating, "We will arrest you. We will put handcuffs on you. We will close those cuffs. We will put you in a cell."[7] DA Krasner went on to state, "We will do everything in our power to convict you and we will make sure you serve your entire sentence because Donald Trump has no power whatsoever to pardon you." *Supra* note 7. The District Attorney has also launched a "Fight Against Federal Overreach" or "F.A.F.O." coalition to support "prosecuting federal law enforcement officers who violate state laws."[8]

62.    The challenged provisions of the Bill imposing a facial coverings ban and identification requirements for law enforcement officers and law enforcement vehicles all violate the principles of intergovernmental immunity contained within the Supremacy Clause of the U.S. Constitution by regulating the Federal Government. *See Washington*, 596 U.S. at 838.

63.    Indeed, the Ninth Circuit recently determined that the United States was likely to prevail on its challenge to a similar identification requirement in California because it unlawfully regulated the Federal Government. *See United States v. California*, 173 F.4th 1060 (9th Cir. 2026). There, the Ninth Circuit held that "if a state law directly regulates the conduct of the United States, it is void irrespective of whether the regulated activities are essential to federal functions or operations, and irrespective of the degree to which the state law interferes with federal functions or operations." *Id.* at 1067. It held that the challenged law attempted "to directly regulate the

---

[7] WHYY, 'We will arrest you': District attorney, sheriff double down on warnings to arrest ICE agents in Philly (Jan. 14, 2026), https://whyy.org/articles/philadelphia-ice-agents-rochelle-bilal-larry-krasner/ (last visited June 3, 2026).

[8] Philadelphia District Attorney's Office, District Attorney Larry Krasner, Reformed City Prosecutors, Announce the Launch of the F.A.F.O. Coalition to Support Prosecution Against Federal Agents Who Violate State Laws (Jan. 29, 2026), https://phillyda.org/news/district-attorney-larry-krasner-reformed-city-prosecutors-announce-the-launch-of-the-f-a-f-o-coalition-to-support-prosecution-against-federal-agents-who-violate-state-laws/ (last visited June 10, 2026).

federal government in its performance of law enforcement operations" by seeking "to control [its] conduct in performing law enforcement operations" and purporting to "override the federal government's power to determine whether, how, and when to publicly identify its officers" thus seeking to "regulate the manner and conditions under which federal agents can enforce federal law." *Id.* In that same litigation, the district court granted a preliminary injunction against California's similar law regulating facial coverings for federal officers. *See United States v. California*, 819 F. Supp. 3d 1109 (C.D. Cal. 2026) (holding that mask laws violated the intergovernmental immunity doctrine by unlawfully discriminating against the Federal Government).

## **BILL 260060 HARMS THE FEDERAL GOVERNMENT AND THE PUBLIC**

64.     The United States has standing to bring this lawsuit because it intends to engage in conduct proscribed by the City's ordinance, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014), and Bill 260060 violates the Supremacy Clause and principles of intergovernmental immunity, and thus imposes a sovereign and irreparable injury on the United States, *cf. Arizona v. Yellen*, 34 F.4th 841, 851–53 (9th Cir. 2022); *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000); *United States v. City of Pittsburgh*, 757 F.2d 43, 45 (3d Cir. 1985). The United States has sovereign authority to manage federal law enforcement activities and, under the Supremacy Clause, need not cede that authority to Philadelphia (or any municipality) by complying with the City's purported requirements for federal law enforcement officers. *See CoreCivic, Inc. v. Governor of N.J.*, 145 F.4th 315, 321 (3d Cir. 2025) (A state law unlawfully regulates the United States when it "'places [either] a prohibition' or mandate on the federal government." (quoting *Hancock v. Train*, 426 U.S. 167, 180 (1976))). A favorable ruling would redress these harms.

65.    Even beyond the sovereign injury, which itself is sufficient for standing to seek an injunction, compliance with Bill 260060 would endanger officers and reduce operational effectiveness by subjecting them to standards that conflict with and differ materially from applicable federal standards and policies.

66.    Federal law enforcement agencies cannot and will not comply with the challenged Bill 260060, which is unconstitutional and recklessly disregards officer safety, public safety, and federal operational needs.

67.    Philadelphia's ordinance seeking to regulate what federal officers may wear in terms of facial coverings and how federal officers and their vehicles must be identified also harm federal law enforcement. Law enforcement is always a dangerous job. But now is an extraordinarily dangerous time to serve in federal law enforcement in particular. Protecting the personal identities of federal officers and by extension their families is necessary in part due to the increasing threats of targeted harassment and retaliation against federal officers and agents for simply doing their jobs commanded by Congress. While such threats have always existed, the volatile political environment has increased such threats exponentially, requiring new tactics to mitigate the harms to officer safety and operational effectiveness.

68.    Increasingly, members of the public photograph, film, and publish federal enforcement actions online and include the personal identities of federal officers for the sole purpose of intimidation and harassment. This content is directly used by members of organized crime and transnational criminal organizations in serious and potentially deadly ways.

69.    For example, some individuals photograph officers' faces and run them through facial recognition applications that search social media and doxxing sites such as ICESpy.org, ICEList.is, and ICEList.info. Once a match is made, they often search for family members,

19

including children, and disseminate this information online, allowing people to track, harass, and obstruct law enforcement.

70.     This opens officers up to harassment, tracking, and assaults in the performance of their duties in the field. These threats are coming from rioters, illegal aliens, as well as "highly sophisticated gangs like Tren de Aragua and MS-13, criminal rings, murderers, and rapists."[9]

71.     Facial coverings can prevent agitators from identifying and tracking officers, especially those using facial recognition or other tools. And while officers almost always wear tags identifying them as federal officers (with the exception of, for example, undercover or plainclothes operations), personal identifiers carry similar risks that can allow agitators to identify and harass individual officers. Protecting officers' personal identities is particularly important during high-risk enforcement operations involving individuals with violent criminal history, gang affiliations, transnational criminal organizations, and known or suspected terrorists.

72.     Moreover, federal agencies, including but not limited to the FBI, DEA, and DHS, routinely deploy unmarked vehicles as a critical and congressionally sanctioned tool for conducting undercover operations, surveillance, and other sensitive law enforcement activities. *See* 41 C.F.R. § 102-34.155 ("Motor vehicles used primarily for investigative, law enforcement, intelligence, or security duties have an unlimited exception from displaying U.S. Government license plates and motor vehicle identification when identifying these motor vehicles would interfere with those duties."); 41 C.F.R. § 102-34.175 (same); 31 U.S.C. § 1344 (authorizing use of government-owned vehicles for home-to-work transportation); 41 C.F.R. § 102-34.205 (same);

---

[9] Press Release, DHS, 8000% Increase in Death Threats Against DHS, ICE Law Enforcement as They Risk Their Lives to Remove the Worst of the Worst (Oct. 30, 2025), https://www.dhs.gov/news/2025/10/30/8000-increase-death-threats-against-ice-law-enforcement-they-risk-their-lives (last visited June 3, 2026).

20

*see generally* 28 U.S.C. § 533 (authorizing the Attorney General to appoint officials to conduct investigations and detect crimes against the United States). The use of unmarked vehicles in these missions in Philadelphia is essential to their success and to the safety of officers conducting them, as well as the general public.

73.     Facial coverings and removal of personal and vehicle identifiers also prevent suspects from identifying officers who may be involved in future enforcement actions. Because suspects who recognize officers may take preemptive actions to evade apprehension and obstruct enforcement efforts, flexibility is critical for maintaining operational effectiveness, especially in areas where repeat offenders or organized criminal networks are prevalent. The existence of databases with individual officers' identities can also undermine undercover operations and plainclothes missions.

74.     Due to the nature of law enforcement operations, officers require flexibility to determine when to announce their identities. To this end, CBP and ICE have discretion on when they permit their officers and agents to wear facial coverings and remove individual identifiers. They also allow officers discretion as to when and what information is provided to a subject of arrest, holding, or detention. For instance, federal regulations provide that "an immigration officer who is authorized to execute an arrest" announce themselves and the purpose of the arrest "as soon as it is practical and safe to do so." 8 C.F.R. § 287.8(c)(2)(iii). That is up to the officers based on the facts and circumstances in a particular case and cannot be subjected to bright-line or conflicting rules. Removing this flexibility and requiring federal officers to identify themselves to a subject of arrest, holding, or detention or produce a badge upon request would undermine officer safety and operational effectiveness.

75.     Denying federal agencies and officers discretion in these areas would chill federal

law enforcement and deter applicants for law enforcement positions, threatening the safety of communities in Philadelphia.

76.     Finally, the threat of enforcement for noncompliance will only further exacerbate the chilling effects of these laws. Officers face a choice of whether to wear facial coverings or identify themselves and their agencies when it may be dangerous to themselves, others, and the operation, or face the threat of criminal and civil enforcement. Either option presents serious risks and harms and purposefully works to chill the enforcement of federal law. *Davis*, 100 U.S. 262–63 (1879); *In re Neagle*, 135 U.S. at 75.

77.     The United States is irreparably harmed by laws that violate the Supremacy Clause by regulating the United States, thus impinging on the ability of the United States to carry out its functions through its Executive agencies, particularly in the context of its sovereign functions, such as federal criminal and immigration enforcement. *See CoreCivic*, 145 F.4th at 325 (invalidating New Jersey law on intergovernmental immunity principles because the law "prevent[ed] the federal government from choosing how and through whom it will carry out a core federal function" relating to immigration detention); *Pittsburgh*, 757 F.2d at 45 (3d Cir. 1985) (finding "injury to [United States'] sovereign rights sufficient to have standing to sue in the district court"). Further, enforcement is certainly impending: Bill 260060 is set to take effect on July 7; the challenged provisions plainly apply to federal law enforcement officers and agencies and carry criminal and civil penalties for noncompliance; those officers operating within Philadelphia routinely engage in the very conduct the ordinance proscribes; and the City has given no indication that it does not intend to enforce its provisions against them or their agencies.

78.     There is no other adequate remedy at law.

79.     The public interest favors preserving the constitutional limits on local authority

22

over the Federal Government and ensuring federal officers can carry out their congressionally mandated functions.

80. The public interest also favors allowing federal officers to safely and effectively enforce the laws of the United States.

## CLAIMS FOR RELIEF

## COUNT I

## VIOLATION OF THE SUPREMACY CLAUSE – SECTION 2, § 10-843 OF BILL 260060 (UNLAWFUL REGULATION OF THE FEDERAL GOVERNMENT)

81. Plaintiff hereby incorporates paragraphs 1 through 80 of the Complaint as if fully stated herein.

82. Philadelphia's enforcement of Section 2, § 10-843 of Bill 260060 against law enforcement officers from federal agencies constitutes unlawful regulation of the Federal Government.

83. Section 2, § 10-843(2)(a) purports to ban federal agents from wearing facial coverings while performing their duties in Philadelphia and subjects those agents to enforcement for noncompliance including criminal penalties.

84. Section 2, § 10-843(2)(b) purports to require federal agents to display visible identification while performing their duties in Philadelphia and subjects those agents to enforcement for noncompliance, including criminal penalties.

85. Section 2, § 10-843(2)(c) purports to require federal agents to display visible identification of their respective federal agencies on their vehicles while performing their duties in Philadelphia and subjects those agents to enforcement for noncompliance, including criminal penalties.

86. Section 2, § 10-843(2)(d) purports to require federal agents to provide identification

23

to a subject of arrest, holding, or detention while performing their duties in Philadelphia and subjects those agents to enforcement for noncompliance, including criminal penalties.

87.     Section 2, § 10-843 of Bill 260060 therefore purports to directly regulate the Federal Government in violation of the intergovernmental immunity doctrine.

88.     Accordingly, Section 2, § 10-843 of Bill 260060 is invalid under the Supremacy Clause and its application to the Federal Government should be enjoined.

## COUNT II

### VIOLATION OF THE SUPREMACY CLAUSE – SECTION 2, § 10-844 OF BILL 260060 (UNLAWFUL REGULATION OF THE FEDERAL GOVERNMENT)

89.     Plaintiff hereby incorporates paragraphs 1 through 80 of this Complaint as if fully stated herein.

90.     Philadelphia's enforcement of Section 2, § 10-844 of Bill 260060 against federal law enforcement officers constitutes an unlawful regulation of the Federal Government.

91.     Section 2, § 10-844(2)(a) purports to require federal agents to display visible identification while performing their duties in Philadelphia and subjects those agents to enforcement for noncompliance, including criminal penalties.

92.     Section 2, § 10-844(2)(b) purports to require federal agents to provide identification to a subject of arrest, holding, or detention while performing their duties in Philadelphia and subjects those federal agents to enforcement for noncompliance, including criminal penalties.

93.     Section 2, § 10-844(2)(c) purports to require federal agents to produce a badge, tag, or label upon request while performing their duties in Philadelphia and subjects those agents to enforcement for noncompliance, including criminal penalties.

94.     Section 2, § 10-844(2)(d) purports to require federal agents to display visible identification of their respective federal agencies on their vehicles while performing their duties in

24

Philadelphia and subjects those agents to state enforcement for noncompliance, including criminal penalties.

95. Section 2, § 10-844 of Bill 260060 therefore purports to directly regulate the Federal Government in violation of the intergovernmental immunity doctrine.

96. Accordingly, § 10-844 of Bill 260060 is invalid under the Supremacy Clause and its application to the Federal Government should be enjoined.

## COUNT III

**VIOLATION OF THE SUPREMACY CLAUSE – SECTION 2, § 10-845 OF BILL 260060
(UNLAWFUL REGULATION OF THE FEDERAL GOVERNMENT)**

97. Plaintiff hereby incorporates paragraphs 1 through 80 of the Complaint as if fully stated herein.

98. Philadelphia's enforcement of Section 2, § 10-845 of Bill 260060 against federal law enforcement officers and their employing agencies constitutes unlawful regulation of the Federal Government.

99. Section 2, § 10-845(2)(a) purports to ban federal agents from wearing facial coverings while performing their duties in Philadelphia and subjects those agents' employing agencies to enforcement for noncompliance including civil penalties.

100. Section 2, § 10-845(2)(a) purports to require federal agents to provide identification to a subject of arrest, holding, or detention while performing their duties in Philadelphia and subjects those agents' employing agencies to enforcement for noncompliance, including civil penalties.

101. Section 2, § 10-845(2)(b) purports to require federal agents to display visible identification while performing their duties in Philadelphia and subjects those agents' employing agencies to enforcement for noncompliance, including civil penalties.

102.    Section 2, § 10-845(2)(c) purports to require federal agents to display visible identification of their respective federal agencies on their vehicles while performing their duties in Philadelphia and subjects those agents' employing agencies to enforcement for noncompliance, including civil penalties.

103.    Section 2, § 10-845 of Bill 260060 therefore purports to directly regulate the Federal Government in violation of the intergovernmental immunity doctrine.

104.    Accordingly, Section 2, § 10-845 of Bill 260060 is invalid under the Supremacy Clause and its application to the Federal Government should be enjoined.

## COUNT IV

**VIOLATION OF THE SUPREMACY CLAUSE – SECTION 2, § 10-846 OF BILL 260060
(UNLAWFUL REGULATION OF THE FEDERAL GOVERNMENT)**

105.    Plaintiff hereby incorporates paragraphs 1 through 80 of this Complaint as if fully stated herein.

106.    Philadelphia's enforcement of Section 2, § 10-846 of Bill 260060 against federal law enforcement officers and their employing agencies constitutes an unlawful regulation of the Federal Government.

107.    Section 2, § 10-846(2)(a) purports to require federal agents to display visible identification while performing their duties in Philadelphia and subjects those agents' employing agencies to enforcement for noncompliance, including civil penalties.

108.    Section 2, § 10-846(2)(b) purports to require federal agents to produce a badge, tag, or label upon request while performing their duties in Philadelphia and subjects those agents' employing agencies to enforcement for noncompliance, including civil penalties.

109.    Section 2, § 10-846(2)(c) purports to require federal agents to display visible identification of their respective federal agencies on their vehicles while performing their duties in

26

Philadelphia and subjects those agents' employing agencies to state enforcement for noncompliance, including civil penalties.

110.    Section 2, § 10-846 of Bill 260060 therefore purports to directly regulate the Federal Government in violation of the intergovernmental immunity doctrine.

111.    Accordingly, § 10-846 of Bill 260060 is invalid under the Supremacy Clause and its application to the Federal Government should be enjoined.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests the following relief:

A.    That this Court enter a judgment declaring that Section 2, §§ 10-843, 10-844, 10-845, and 10-846 of Bill 260060 violate the Supremacy Clause and are therefore invalid as to federal agencies and officers;

B.    That this Court preliminarily and permanently enjoin Defendants, as well as their successors, agents, servants, employees and attorneys, and all those working in concert with them, from enforcing §§ 10-843, 10-844, 10-845, and 10-846 against federal agencies and officers;

C.    That this Court award the United States its costs and fees in this action; and

D.    That this Court award any other relief it deems just and proper.


DATED: June 18, 2026

| | |
|---|---|
| STANLEY E. WOODWARD, JR. | */s/ Pooja D. Majmundar* |
| Associate Attorney General | POOJA D. MAJMUNDAR (DC Bar No. 1779930) |
| BRETT A. SHUMATE | BRONWYN H. NAYCI (FL Bar No. 1018924) |
| Assistant Attorney General | Trial Attorneys |
| Civil Division | U.S. Department of Justice, Civil Division |
| | Enforcement & Affirmative Litigation Branch |
| ANNA EDWARDS | P.O. Box 386 |
| Counsel to the Associate Attorney General | Washington, D.C. 20044-0386 |
| | (202) 598-0280 |
| CHARLES E.T. ROBERTS | Pooja.D.Majmundar@usdoj.gov |

Counsel to the Assistant Attorney General
Civil Division

*Attorneys for the United States of America*