**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF PHILADELPHIA; CHERELLE PARKER, Mayor of Philadelphia, in her official capacity; LAWRENCE KRASNER, District Attorney of Philadelphia, in his official capacity; RENEE GARCIA, City Solicitor of Philadelphia, in her official capacity,<br><br>Defendants. | No. 2:26-cv-4208<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

I.        Governing Principles of Federal Law Enforcement ......................................... 2

II.       The Challenged Philadelphia Bill ..................................................................... 5

LEGAL STANDARDS ....................................................................................................... 9

ARGUMENT ..................................................................................................................... 10

III.      The United States Has Pre-Enforcement Standing ........................................ 10

IV.       The United States is Likely to Succeed on the Merits of its Claims ............. 13

          A.    Applicable Law ..................................................................................... 13

          B.    The Challenged Provisions Impermissibly Regulate the Federal Government ............ 15

V.        The United States Faces Irreparable Harm Absent Preliminary Relief ........ 21

VI.       The Balance of Hardships and the Public Interest Weigh in the United States' Favor . 26

CONCLUSION .................................................................................................................. 29

**TABLE OF AUTHORITIES**

**Cases**

*Am. Civil Liberties Union v. Ashcroft,*
    322 F.3d 240 (3d Cir. 2003) ........................................................................ 22, 27

*Am. Fin. Servs. Assn. v. Burke,*
    169 F. Supp. 2d 62 (D. Conn. 2001) ................................................................. 27

*Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.,*
    42 F.3d 1421 (3d Cir. 1994) ............................................................................. 26

*Arizona v. California,*
    283 U.S. 423 (1931) ......................................................................................... 14

*Arizona v. United States,*
    567 U.S. 387 (2012) ...................................................................................... 4, 21

*Arizona v. Yellen,*
    34 F.4th 841 (9th Cir. 2022) .............................................................................11

*Babbitt v. United Farm Workers Nat'l Union,*
    442 U.S. 289 (1979) ......................................................................................... 10

*CoreCivic, Inc. v. Governor of N.J.,*
    145 F.4th 315 (3d Cir. 2025) .................................................................... passim

*Goodyear Atomic Corp. v. Miller,*
    486 U.S. 174 (1988) ......................................................................................... 14

*Hancock v. Train,*
    426 U.S. 167 (1976) ..................................................................................... 14, 15

*In re Neagle,*
    135 U.S. 1 (1890) ............................................................................................. 18

*Jensen v. Lane Cnty.,*
    222 F.3d 570 (9th Cir. 2000) ............................................................................ 12

*Johnson v. Maryland,*
    254 U.S. 51 (1920) ..................................................................................... 14, 18

*KalshiEX, LLC v. Flaherty,*
    172 F.4th 220 (3d Cir. 2026) ...................................................................... 21, 26

*Kos Pharms., Inc. v. Andrx Corp.,*
    369 F.3d 700 (3d Cir. 2004) ............................................................................ 9, 28

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ......................................................................................... 10

*Maldonado v. Houstoun,*
    157 F.3d 179 (3d Cir. 1998) ............................................................................... 9

*Mallet & Co. Inc. v. Lacayo*,
16 F.4th 364 (3d Cir. 2021) ...................................................................... 21

*Mayo v. United States*,
319 U.S. 441 (1943) .......................................................................... 13, 28

*McCulloch v. Maryland*,
17 U.S. (4 Wheat.) 316 (1819) ........................................................... 13, 25

*Nat'l Shooting Sports Found. v. Att'y Gen. of New Jersey*,
80 F.4th 215 (3d Cir. 2023) ...................................................................... 10

*New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*,
669 F.3d 374 (3d Cir. 2012) ........................................................... 21-22, 27

*New Jersey v. U.S. Dep't of Treasury*,
684 F.3d 382 (3d Cir. 2012) ............................................................... 15, 18

*New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*,
491 U.S. 350 (1989) .................................................................................. 21

*New York v. Tanella*,
374 F.3d 141 (2d Cir. 2004) ..................................................................... 24

*Nken v. Holder*,
556 U.S. 418 (2009) ............................................................................... 9, 26

*North Dakota v. United States*,
495 U.S. 423 (1990) .................................................................................. 13

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*,
920 F.2d 187 (3d Cir. 1990) ....................................................................... 9

*Osborn v. Bank of U.S.*,
22 U.S. (9 Wheat.) 738 (1824) .................................................................. 20

*Parker v. Wolf*,
506 F. Supp. 3d 271 (M.D. Pa. 2020) ....................................................... 10

*Pub. Utils. Comm'n of State of Cal. v. United States*,
355 U.S. 534 (1958) .................................................................................. 19

*Reilly v. City of Harrisburg*,
858 F.3d 173 (3d Cir. 2017) ....................................................................... 9

*Rowe v. N.H. Motor Transp. Ass'n*,
552 U.S. 364 (2008) .................................................................................. 25

*Sec. & Exch. Comm'n v. Chappell*,
107 F.4th 114 (3d Cir. 2024) .................................................................... 26

*Seila L. LLC v. Consumer Fin. Prot. Bureau*,
591 U.S. 197 (2020) .................................................................................... 3

*Sol Inc. v. Whiting*,
732 F.3d 1006 (9th Cir. 2013) ..................................................................... 9

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) .................................................................................................. 10

*Steffel v. Thompson*,
   415 U.S. 452 (1974) .................................................................................................. 10

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) .................................................................................................. 10

*Tennessee v. Davis*,
   100 U.S. 257 (1879) .......................................................................................... 3, 14, 18

*Tweed-New Haven Airport Auth. v. Tong*,
   930 F.3d 65 (2d Cir. 2019) ....................................................................................... 10

*United States v. Alabama*,
   691 F.3d 1269 (11th Cir. 2012) ................................................................................ 27

*United States v. Arizona*,
   641 F.3d 339 (9th Cir. 2011) .................................................................................... 21

*United States v. California*,
   173 F.4th 1060 (9th Cir. 2026) ........................................................................... passim

*United States v. California*,
   819 F. Supp. 3d 1109 (C.D. Cal. 2026) .................................................................... 26

*United States v. California*,
   921 F.3d 865 (9th Cir. 2019) ............................................................................ 18, 19-20

*United States v. City of Pittsburgh*,
   757 F.2d 43 (3d Cir. 1985) ........................................................................................11

*United States v. Connecticut*,
   566 F. Supp. 571 (D. Conn. 1983), *aff'd without opinion,* 742 F.2d 1443 (2d Cir. 1983), *aff'd,*
   465 U.S.1014 (1984) ................................................................................................. 22

*United States v. Fresno Cnty.*,
   429 U.S. 452 (1977) .................................................................................................. 25

*United States v. Town of Windsor*,
   765 F.2d 16 (2d Cir. 1985) ....................................................................................... 14

*Valle del Sol Inc. v. Whiting*,
   732 F.3d 1006 (9th Cir. 2013) .................................................................................... 9

*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*,
   529 U.S. 765 (2000) ..................................................................................................11

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7, 129 S. Ct. 365 (2008) .............................................................................. 9

## Constitution, Statutes, and Ordinances

   U.S. Const. art. II § 3 ................................................................................................. 3

   U.S. Const., art. I § 8, cl. 4........................................................................................ 4

5 U.S.C.
  § 301 .................................................................................................... 4
  § 5901 .................................................................................................. 4

6 U.S.C.
  § 211.................................................................................................... 3
  § 252 ................................................................................................... 3

8 U.S.C.
  § 1103(a)(2) ........................................................................................ 4
  § 1182.................................................................................................. 4
  § 1225 ................................................................................................. 4
  § 1229a................................................................................................ 4
  § 1231 ................................................................................................. 4

18 Pa. C.S. § 501............................................................................................ 5, 13

21 U.S.C. § 801............................................................................................... 3

28 U.S.C.
  § 509 ................................................................................................... 4
  § 533 ................................................................................................. 23
  § 531 ................................................................................................... 3

29 U.S.C. § 668.............................................................................................. 5

40 U.S.C. § 609.............................................................................................. 5

51 Pa.C.S. § 508............................................................................................ 5-6

Pub. L. 93–253 .............................................................................................. 3

Phila. City Council Bill No. 260060 (2026) .................................................. passim
  § 2-202 ................................................................................................ 5
  § 10-843 ....................................................................................... passim
  § 10-843(2) ......................................................................................... 6
  § 10-843(3)(a) ................................................................................ 6, 15
  § 10-843(3)(b) .............................................................................. passim
  § 10-843(4) ........................................................................................ 16
  § 10-844 ....................................................................................... passim
  § 10-844(2) ......................................................................................... 7
  § 10-844(2)(a) .................................................................................... 16
  § 10-844(2)(b)-(c) .............................................................................. 16
  § 10-844(3) .................................................................................... 7, 17
  § 10-844(4) ........................................................................................ 17
  § 10-845 ........................................................................................ 7, 16
  § 10-846 .............................................................................................. 7
  § 10-848(1) ..................................................................................... 8, 20
  § 10-848(2) ......................................................................................... 8
  § 10-848(2)(c) .................................................................................... 20

v

## Regulations and Rules

8 C.F.R. § 287.8 ....................................................................................................... 24

28 C.F.R. § 0.100-0.101 ............................................................................................. 4

41 C.F.R. § 102-34.155 .............................................................................................. 5

41 C.F.R. § 102-34.175 ............................................................................................ 23

41 C.F.R. § 102-34.155(a)........................................................................................ 23

Fed. R. Civ. P. 41 ....................................................................................................... 3

## Other Authorities

38 F.R. 15932 ............................................................................................................. 3

**INTRODUCTION**

The United States has sovereign authority to manage federal law enforcement activities and, under the Supremacy Clause, need not cede that authority to any state or municipality. Yet the City of Philadelphia, through its new Bill No. 260060 (hereinafter the "Bill" or "Bill 260060"),[1] seeks to intrude on core federal prerogatives. Bill 260060 purports to regulate federal officers when executing their official duties by applying municipal-law standards governing facial coverings, identification of federal officers, and markings of federal vehicles. Indeed, Section 2 prohibits federal law enforcement officers from wearing facial coverings in the performance of their official duties, requires federal officers to identify themselves when interacting with the public, both upon request and to subjects of arrest, holding, or detention; and dictates what kinds of vehicles federal officers must use in the City. The Bill effectively bans federal officers from conducting undercover operations—which are critical to carrying out federal law enforcement operations—unless federal agencies implement and publicly post a written policy meeting the City's priorities and standards. Violations of these provisions, which will take effect on July 7, 2026, carry criminal penalties against federal officers, including a fine or imprisonment up to 90 days, or both, as well as civil penalties against their employing agencies. Such provisions flagrantly violate the principles of intergovernmental immunity that flow from the Supremacy Clause of the U.S. Constitution.

As with any state or municipality, the City of Philadelphia has no authority to regulate federal officers in this way, any more than it could regulate the color of their vests, forbid federal agents from carrying guns, or require them to give state- or local-law warnings before effectuating arrests. As the Ninth Circuit recently held regarding a California law materially similar to several

---

[1] A copy of the ordinance is attached to the Complaint as Exhibit A. *See* ECF 1-2. All references to Sections 1, 2, and 3 of Bill 260060 herein refer to that Exhibit.

of the provisions at issue here, a law that "aims to regulate the manner and conditions under which federal agents can enforce federal law" including by "overrid[ing] the federal government's power to determine whether, how, and when to publicly identify its officers" "directly regulates conduct reserved to sovereigns" and "is barred by intergovernmental immunity[.]" *United States v. California*, 173 F.4th 1060, 1067-68 (9th Cir. 2026) (granting a preliminary injunction against a state law requiring officers to visibly display identification).

The United States therefore moves this Court for a preliminary injunction enjoining the City of Philadelphia and its officials from enforcing Section 2 of Bill 260060 against the Federal Government. Those sections violate the Supremacy Clause by seeking to regulate the uniforms, identification, and vehicles of federal officers.

These constitutional violations and injuries to federal sovereignty alone establish irreparable harm, but the harm here is even greater. If forced to comply with these laws, federal officers will face increased doxxing and harassment, and law enforcement operations will be compromised. Meanwhile, if agents refuse to comply, they risk criminal prosecution and their agencies are exposed to civil penalties.

Finally, the balance of equities and the public interest favor an injunction: there is a significant sovereign injury from local laws that seek to regulate the Federal Government, and there is significant public interest in protecting federal officers' safety, removing unlawful impediments to federal law enforcement operations, and permitting agents to uphold federal law.

The United States is therefore entitled to a preliminary injunction.

## BACKGROUND

### I.      Governing Principles of Federal Law Enforcement

The President has a constitutional duty to "take Care that the Laws be faithfully executed."

2

U.S. Const. art. II § 3. The authority to discharge that duty "extend[s] over the whole territory of the Union, acting upon the States and upon the people of the States." *Tennessee v. Davis*, 100 U.S. 257, 263 (1879). Because "no single person could fulfill that responsibility alone, the Framers expected that the President would rely on subordinate officers for assistance." *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020). In executing the laws, the Federal Government "can act only through [those] officers and agents," who must in turn "act within the States." *Davis*, 100 U.S. at 263. Accordingly, federal law enforcement activities necessarily take place within the several States, including in Pennsylvania.

Federal law enforcement agencies, including those within the Departments of Justice ("DOJ") and Homeland Security ("DHS"), are created by federal law. *See, e.g.*, 28 U.S.C. §§ 531 (Federal Bureau of Investigation ("FBI")), 561 (U.S. Marshals Service), 599A (Bureau of Alcohol, Tobacco, Firearms and Explosives); 6 U.S.C. § 252 (U.S. Immigration and Customs Enforcement ("ICE")); 6 U.S.C. § 211 (U.S. Customs and Border Protection ("CBP")); Reorganization Plan No. 2 of 1973, 38 F.R. 15932, 87 Stat. 1091, as amended Pub. L. 93–253, §1, Mar. 16, 1974, 88 Stat. 50 (Drug Enforcement Administration ("DEA")). All law enforcement agents within these agencies have the power to swear out and execute search warrants based upon probable cause. Fed. R. Civ. P. 41. Different law enforcement agencies within the Federal Government have different, but sometimes overlapping, authorities for the types of crimes and offenses they investigate and prosecute.

For example, the DEA enforces the Nation's controlled-substances laws. *See generally* 21 U.S.C. § 801, *et seq*. In carrying out that mission, the DEA investigates and aids in the prosecution of violators of controlled substances laws; seizes and forfeits assets derived from illicit drug trafficking; and manages a national drug intelligence program in cooperation with federal, state,

local, and foreign officials. *See* 28 C.F.R. § 0.100-0.101.

The FBI is charged with rooting out violent crime, defending the homeland against terrorist attacks, and investigating and combating cybercrime, among other duties. *See id*. § 0.85. It conducts extensive operations throughout the country and in partnership with federal, state, local, and foreign officials.

DHS and its component agencies ICE and CBP are primarily responsible for enforcing the nation's immigration laws. Those laws are primarily contained in the Immigration and Nationality Act ("INA"), and, pursuant to Congress's power to "establish an uniform Rule of Naturalization," U.S. Const., art. I § 8, cl. 4, make up the framework for the "governance of immigration and alien status." *See Arizona v. United States*, 567 U.S. 387, 395 (2012). The INA gives the Executive Branch broad authority to inspect, investigate, arrest, detain, and remove aliens who are unlawfully in the United States. *See, e.g.*, 8 U.S.C. §§ 1182, 1225-29a, 1231.

To achieve the goals outlined above, the head of each agency has the power to govern the agency's affairs and direct its agents' activities. *See, e.g.*, 5 U.S.C. § 301 (authorizing the head of an Executive or military department to "prescribe regulations for the government of his department [and] the conduct of its employees"); 28 U.S.C. § 509 (vesting all functions of other officers, agencies, and employees of the Department of Justice in the Attorney General); 8 U.S.C. § 1103(a)(2) (authorizing the DHS Secretary to "control, direct[], and supervis[e]" all DHS employees). Included within that power to govern the agencies is the power to determine how agents must conduct themselves when engaged in official duties in accordance with federal law. Federal law similarly empowers the Executive to provide for and dictate federal law enforcement officers' uniforms and equipment, along with vehicle identification requirements, when carrying out their official duties. *See, e.g.*, *id*.; 5 U.S.C. § 5901 (directing the head of each federal agency

4

to furnish its employees a uniform or an allowance for a uniform); 29 U.S.C. § 668 (requiring heads of federal agencies to, as part of their occupational safety and health programs, acquire, maintain, and require the use of safety equipment, personal protective equipment, and devices reasonably necessary to protect employees); 40 U.S.C. § 609 (stating motor vehicle identification requirements but noting that regulations "may provide for exemptions when conspicuous identification would interfere with the purpose for which a vehicle is acquired and used"); 41 C.F.R. § 102-34.155 (stating that "[m]otor vehicles used primarily for investigative, law enforcement, intelligence, or security duties have an unlimited exemption from displaying U.S. Government license plates and motor vehicle identification when identifying these motor vehicles would interfere with those duties").

## II.     The Challenged Philadelphia Bill

Bill 260060 was passed by the Philadelphia City Council on April 23, 2026, and despite not being signed by Mayor Parker, it became law on May 8, 2026, pursuant to the Philadelphia Home Rule Charter, which provides that a city bill shall pass without a mayoral signature unless she disapproves it. *See* Phila. Home Rule Charter § 2-202; ECF 1-2, Compl. Ex. A (stating that Bill 260060 was not returned with the Mayor's signature, but regardless "the ordinance becomes as effective as if the Mayor had approved it [because she did not disapprove it]."). The Bill will take effect on July 7, 2026. *See id.* at § 3 (stating "Ordinance shall take effect 60 days after its adoption"). The Bill purports to apply these new rules to federal law enforcement officers by amending Title 10 of the Philadelphia Code, "Regulation of Individual Conduct and Activity." Indeed, the Bill defines "Law Enforcement Officer" as any "peace officer" as defined in 18 Pa. C.S. § 501,[2] including but not limited to local, state, or federal officers. *Id.* §§ 10-843(1)(a), 10-

---

[2] "Any person who by virtue of his office or public employment is vested by law with a duty to maintain public order or to make arrests for offenses, whether that duty extends to all offenses or

844(1)(a), 10-845(1)(a), 10-846(1)(a).

Philadelphia's Bill seeks to regulate federal officers when executing their federal duties by applying municipal-law standards governing facial covering and identification to federal officers and vehicles. *See* Section 1(1) ("It is the intent of this Council to define the structure of the scope of duty, as well as substantive obligations of . . . federal law enforcement operating within the jurisdiction of the City of Philadelphia."). Section 2 amends Title 10 of the Philadelphia Code to add Chapter 10-800, adding § 10-843, titled, "Criminal Concealment by a Law Enforcement Officer." Under § 10-843(2), "a law enforcement officer is guilty of criminal concealment if the law enforcement officer, while performing duties and interacting with the public:

> (a) Wears a mask, facial covering, disguise or any other garment that obscures the identity of the law enforcement officer;
> (b) Intentionally obscures, covers, removes or otherwise conceals a badge, tag, label or other identifying information required to be visibly displayed;
> (c) Uses a vehicle in the course of official duties that does not contain clear identifying information for the entity that employs the law enforcement officer that is visible to individuals other than such law enforcement officer; or
> (d) Fails to identify themselves to a subject of arrest, holding or detention or to provide identifying information upon request to the subject of an arrest after an arrest has been made."

§ 10-843(2).

The facial coverings requirement is subject to only limited exceptions, such as wearing "a medical-grade mask or respirator necessary to prevent the transmission of airborne illnesses" or "for a religious purpose" or when "safeguard[ing] the face or head" or when "designed to protect against smoke or hazardous conditions during fire response or similar emergencies." § 10-843(3)(a). Aside from the limited facial covering exceptions, a law enforcement officer would not be found to violate subsection (2) "if the law enforcement officer is employed by a law

---

is limited to specific offenses, or any person on active State duty pursuant to 51 Pa.C.S. § 508 (relating to active duty for emergency). The term 'peace officer' shall also include any member of any park police department of any county of the third class."

enforcement agency that maintains and publicly posts a written policy pursuant to Section 10-848." § 10-843(3)(b). Section 2, § 10-845 is the civil analogue of § 10-843; it repeats § 10-843's prohibited conduct and exceptions and imposes civil penalties against the officer's employing agency enforceable by the City Solicitor and private parties, including up to $2,000 in fines per violation. § 10-845(4)-(5) (providing private right of action "against a . . . department or agency that employs a person violating this Section").

Section 2 also adds § 10-844, titled, "Visible Badge Requirement." This section likewise purports to regulate what federal officers must wear within Philadelphia when carrying out their duties, including how they must be identified to the public and to subjects of arrests, holdings, or detention, and how their vehicles must be identified. Under § 10-844 law enforcement officers are "guilty of criminal concealment if the law enforcement officer, while performing official duties and interacting with the public, fails to:

> (a) Visibly display a badge, tag or label clearly identifying the name, rank, and entity that employs that law enforcement officer at all times;
> (b) Identify themselves to a subject of arrest, holding or detention;
> (c) Produce a badge, tag or label upon request; or
> (d) Using a vehicle that contains clear identifying information for the entity that employs the law enforcement officer which is visible to individuals other than such law enforcement officer."

§ 10-844(2). The only stated exception to § 10-844(2) applies "to a law enforcement officer employed by a law enforcement agency that maintains and publicly posts a written law enforcement policy pursuant to Section 10-848." § 10-844(3). Section 2, § 10-846 is the civil analogue of § 10-844; it repeats § 10-844's required conduct and exceptions and imposes civil penalties against the officer's employing agency enforceable by the City Solicitor and private parties, including up to $2,000 in fines per violation. § 10-846(4)-(5) (providing private right of action "against a . . . department or agency that employs a person violating this Section").

Both § 10-843 and § 10-844 provide that violators of these sections "shall be sentenced to pay a fine [up to $300] pursuant to Philadelphia Code § 1-109 per incident or undergo imprisonment for a period not exceeding ninety (90) days, or both, in addition to any other penalties imposed." §§ 10-843(4), 10-844(4). The Bill authorizes the District Attorney to investigate and criminally prosecute federal officers whose facial covering and identification is deemed to violate the municipal prohibitions and requirements while executing their official duties. *See* § 10-843(5) ("*Enforcement*. The District Attorney shall have the right to bring an action in a court of competent jurisdiction in this Commonwealth against any law enforcement officer under this section.").

Section 2 also purports to require federal law enforcement agencies to adopt and publicize certain policies and is enforced as an exception to criminal and civil liability. § 10-848(1). The required policy must include, for example, an express commitment by the agency to the stated objectives underlying the Bill and "[a] requirement that all law enforcement officers not use a facial covering when performing their duties, subject to a list of narrowly tailored exemptions[,]" such as active undercover operations or assignments, health and physical safety, identity protection during prosecution, and exigent circumstances. § 10-848(2).

Notably, Mayor Parker's office stated that the decision not to sign Bill 260060 was made upon receiving a letter from Philadelphia City Solicitor Renee Garcia which expressed concerns that the Bill poses "significant legal problems, primarily concerning the authority of the City to regulate the conduct of federal officers when carrying out their duties under federal law."[3] City Solicitor Garcia also referenced the recent Ninth Circuit decision in *United States v. California*,

---

[3] NBC10 PHILADELPHIA: Mayor Parker signs all 'ICE Out' bills in Philly except for mask ban: Mayor Cherelle Parker signed six of the seven bills that would limit ICE operations in Philadelphia, https://www.nbcphiladelphia.com/news/local/mayor-parker-signs-all-ice-out-bills-in-philly-except-for-mask-ban/4398543/ (last visited June 18, 2026).

8

173 F.4th 1060 (9th Cir. 2026), that granted a preliminary injunction against a similar identification law as it determined it was likely unconstitutional. City Solicitor Garcia's letter also stated: "Given the Bill's significant legal and operational challenges, signing this Bill, in my view, would send an inaccurate signal to the public that the Administration can legally and practically enforce the Bill." *Supra* note 3.

## LEGAL STANDARDS

A preliminary injunction may be granted if the plaintiff establishes (1) "he is likely to succeed on the merits," (2) "he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in his favor," and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008); *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998); *see Reilly v. City of Harrisburg*, 858 F.3d 173, 176-79 (3d Cir. 2017). Where, as here, the government is a party to the suit, the final two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). In general, where the United States has demonstrated a likelihood of success on the merits of a Supremacy Clause claim, the other factors also favor a preliminary injunction. *See*, *e.g.*, *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013).

A prohibitive preliminary injunction is designed to maintain the status quo ante until a final decision on the merits of the litigation can be entered. *See Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708, 729 (3d Cir. 2004). The status quo ante is "the last, peaceable, noncontested status of the parties" before the controversy began. *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990) (citation omitted).

9

## ARGUMENT

### III.    The United States Has Pre-Enforcement Standing

Article III standing requires a plaintiff to demonstrate a concrete injury that is fairly traceable to the conduct of the defendant and judicially redressable. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To satisfy this requirement based on the threatened enforcement of a law, "it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974); *see Parker v. Wolf*, 506 F. Supp. 3d 271, 289 (M.D. Pa. 2020), *aff'd sub nom. Parker v. Governor of Pennsylvania*, No. 20-3518, 2021 WL 5492803 (3d Cir. Nov. 23, 2021). Rather, that requirement is satisfied where the plaintiff alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)); *see Nat'l Shooting Sports Found. v. Att'y Gen. of New Jersey*, 80 F.4th 215, 219 (3d Cir. 2023). Further, "the [traceability] requirement is met" where "a plaintiff is threatened by the enforcement of a statute that specifically targets the plaintiff." *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d Cir. 2019) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992)).

The United States easily satisfies these requirements. First, the United States asserts "an intention to engage in a course of conduct arguably affected with a constitutional interest," to act through its officers in accordance with its own policies and with federal law with respect to certain conduct, but that is proscribed by a local ordinance. *See Driehaus*, 573 U.S. at 159 (citation omitted). The United States has sovereign authority to manage federal law enforcement activities

10

and, under the Supremacy Clause, need not cede that authority to Philadelphia by complying with Philadelphia's purported requirements for federal law enforcement officers. Indeed, the very fact that a municipality is attempting to regulate the conduct of the Federal Government inflicts a "sovereign injury" on the United States. *See United States v. California*, 173 F.4th at 1069 ("irreparable harm necessarily results from allowing California to enforce a law invalid under the doctrine of intergovernmental immunity."); *cf. Arizona v. Yellen*, 34 F.4th 841, 851-53 (9th Cir. 2022); *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000); *see also United States v. City of Pittsburgh*, 757 F.2d 43, 45 (3d Cir. 1985) (finding "injury to [United States'] sovereign rights sufficient to have standing to sue in the district court").

Even beyond the sovereign injury itself, which is sufficient for standing to seek an injunction, compliance with Bill 260060 would endanger officers and reduce operational effectiveness by subjecting them to standards that may conflict with and differ materially from applicable federal standards and policies. To be clear, the United States will not direct its law enforcement agencies to adopt the policies that Philadelphia demands or require its officers to comply with these provisions of Philadelphia law. *See* Jacobs Decl.[4] ¶ 14; Hodnett Decl.[5] ¶¶ 15, 21. In consequence, federal officers are threatened with criminal prosecution and their agencies with civil penalties beginning July 7. That poses a serious and concrete injury that the Federal Government is entitled to address through this pre-enforcement challenge.

Second, the threat of future enforcement is substantial as Bill 260060 will take effect on July 7, 2026, and Philadelphia has proclaimed its intent to enforce its provisions against federal

---

[4] "Jacobs Decl." refers to the June 18, 2026 declaration of Wayne A. Jacobs of FBI, filed with this motion.
[5] "Hodnett Decl." refers to the June 18, 2026 declaration of Thomas Hodnett of DEA, filed with this motion.

agents. For example, District Attorney ("DA") Lawrence Krasner said ICE agents who break the law in Philadelphia will be arrested, stating, "We will arrest you. We will put handcuffs on you. We will close those cuffs. We will put you in a cell."[6] DA Krasner went on to state, "We will do everything in our power to convict you and we will make sure you serve your entire sentence because Donald Trump has no power whatsoever to pardon you." *Supra* note 6. The Philadelphia DA has also launched a "Fight Against Federal Overreach" or "F.A.F.O." coalition to support "prosecuting federal law enforcement officers who violate state laws."[7]

Philadelphia's Bill further threatens immediate harm to the United States as the challenged provisions deter officers from taking safety measures necessary to protect their health, well-being, identities, and families, which can also chill federal law enforcement operations. *See* Jacobs Decl. ¶¶ 8-13; Hodnett Decl. ¶¶ 13, 16-21; Rife Decl.[8] ¶¶ 18-32; Hargis Decl.[9] ¶¶ 6-12, 14, 16-20. These laws thus threaten the strong federal interest in "serv[ing] the public good by zealous enforcement of the law and the avoidance of deterring talented candidates from entering government employment for fear of liability." *Jensen v. Lane Cnty.*, 222 F.3d 570, 576 (9th Cir. 2000).

In short, Bill 260060 imposes concrete and immediate harms on the Federal Government and its interests by threatening federal officers with prosecution and, in turn, chilling their protected conduct and endangering both their safety and the integrity of federal operations. *See,*

---

[6] WHYY, 'We will arrest you': District attorney, sheriff double down on warnings to arrest ICE agents in Philly (Jan. 14, 2026), https://whyy.org/articles/philadelphia-ice-agents-rochelle-bilal-larry-krasner/ (last visited June 18, 2026).

[7] Philadelphia District Attorney's Office, District Attorney Larry Krasner, Reformed City Prosecutors, Announce the Launch of the F.A.F.O. Coalition to Support Prosecution Against Federal Agents Who Violate State Laws (Jan. 29, 2026), https://phillyda.org/news/district-attorney-larry-krasner-reformed-city-prosecutors-announce-the-launch-of-the-f-a-f-o-coalition-to-support-prosecution-against-federal-agents-who-violate-state-laws/ (last visited June 18, 2026).

[8] "Rife Decl." refers to the June 18, 2026 declaration of John Rife of ICE, filed with this motion.

[9] "Hargis Decl." refers to the June 18, 2026 of Justin Hargis of CBP, filed with this motion.

*e.g.*, Jacobs Decl. ¶¶ 8-14; Hodnett Decl. ¶¶ 7-21; Hargis Decl. ¶¶ 13-20; Rife Decl. ¶¶ 29-34. The United States thus has standing to challenge these laws and need not wait for the potentially dangerous situation that would occur were the City of Philadelphia to attempt to arrest a federal officer in the performance of his or her official duties.

## IV.    The United States is Likely to Succeed on the Merits of its Claims

Bill 260060 is invalid as it pertains to federal officers because it purports to regulate the Federal Government directly by defining "law enforcement officer" to include "[a]ny 'peace officer' as defined in 18 Pa.C.S. § 501 (relating to definitions), including but not limited to local, state or federal officers." Section 2, §§ 10-843(1)(a), 10-844(1)(a), 10-845(1)(a), 10-846(1)(a); *see* Section 1(1) ("It is the intent of this Council to define the structure of the scope of duty, as well as substantive obligations of . . . federal law enforcement operating within the jurisdiction of the City of Philadelphia."). The Bill also applies its provisions relating to facial coverings and identification requirements of officers and vehicles (including penalties for violations) to them and their employing agencies. *See* §§ 10-843(2)(a)-(d), 10-843(4)-(5), 10-844(2)(a)-(d), 10-844(4)-(5), 10-845(2)(a)-(c), 10-845(4)-(5), 10-846(2)(a)-(c), 10-846(4)-(5). All such regulation of federal officers violates the Supremacy Clause. The United States therefore is likely to succeed on the merits.

### A.    Applicable Law

Under the Supremacy Clause, States have "no power" to "in any manner control[] the operations of" the Federal Government. *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 436 (1819); *see Mayo v. United States*, 319 U.S. 441, 445 (1943) ("[T]he activities of the Federal Government are free from regulation by any state."). The intergovernmental immunity doctrine encapsulates this principle. A state or local law violates intergovernmental immunity if it

13

"regulates the United States directly," *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality opinion), "unless Congress provides 'clear and unambiguous' authorization for such regulation," *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 175 (1988) (citation omitted); *United States v. Town of Windsor*, 765 F.2d 16, 18 (2d Cir. 1985) ("Absent congressional consent, direct state regulation of the activities of the Government is barred by the Supremacy Clause.").

Furthermore, "intergovernmental immunity . . . forbids States from regulating the federal government *qua* government and from controlling federal governmental functions in any manner and to any degree." *United States v. California*, 173 F.4th 1060, 1068 (9th Cir. 2026); *see CoreCivic, Inc. v. Governor of N.J.*, 145 F.4th 315, 321 (3d Cir. 2025) (A state law unlawfully regulates the United States when it "'places [either] a prohibition' or mandate on the federal government.") (quoting *Hancock v. Train*, 426 U.S. 167, 180 (1976))). An act that "applies exclusively to law enforcement agencies and their officers, including federal law enforcement agencies and federal law enforcement officers . . . directly regulates conduct reserved to sovereigns[]" and is impermissible under the Supremacy Clause. *United States v. California*, 173 F.4th at 1068.

As the Supreme Court put it nearly a century ago: "The United States may perform its functions without conforming to the police regulations of a state." *Arizona v. California*, 283 U.S. 423, 451 (1931). Indeed, "[i]f when . . . acting . . . within the scope of their authority, [federal] officers can be arrested and brought to trial in a State court, for an alleged offence against the law of the State . . . the operations of the general government may at any time be arrested at the will of one of its members." *Tennessee v. Davis*, 100 U.S. 257, 262-63 (1879).

Decisions of the Supreme Court and federal courts of appeals illustrate the kinds of state or local laws that unlawfully regulate the Federal Government's operations. For instance, in

14

*Johnson v. Maryland*, 254 U.S. 51 (1920), the Supreme Court held that a state could not require a Post Office employee to obtain a driver's license from the state, explaining that the state may not "require[] qualifications in addition to those that the [federal] Government has pronounced sufficient." *Id.* at 57. In *Hancock v. Train*, 426 U.S. 167 (1976), the Supreme Court concluded that a state could not forbid federal facilities from operating without a state pollution permit, as such a requirement improperly "place[d] a prohibition on the Federal Government." *Id.* at 179-80 (quotation marks omitted).

In *CoreCivic, Inc.*, the Third Circuit invalidated a New Jersey law based on intergovernmental immunity principles because the law "prevent[ed] the federal government from choosing how and through whom it will carry out a core federal function" relating to immigration detention. 145 F.4th at 325. And in *New Jersey v. U.S. Dep't of Treasury*, 684 F.3d 382 (3d Cir. 2012), the Third Circuit invalidated state unclaimed property laws that imposed civil and criminal penalties for failure to comply because they "would result in a direct regulation of the Federal Government" regardless of whether the states sought to enforce the penalties. *Id.* at 412-13.

**B.      The Challenged Provisions Impermissibly Regulate the Federal Government**

Despite this clear and longstanding precedent, the City of Philadelphia seeks to impose mandates regarding facial covering, officer identification, and vehicle identification directly on federal law enforcement officers carrying out their official duties within the City. The City's new Bill thus purports to regulate federal law enforcement officers directly and is unconstitutional.

Section 2, § 10-843 of Bill 260060 prohibits law enforcement officers in the City of Philadelphia, including federal officers, from wearing a "facial covering" (as broadly defined in § 10-843(2)(a)), except in narrow circumstances for health, safety, or a religious purpose. § 10-843(3)(a). Further, § 10-843(2)(b) requires law enforcement officers in Philadelphia, including

15

federal officers, to wear visible identifying information, such as a badge, tag, or label and prohibits its concealment. Section 10-843(2)(c) requires law enforcement officers in Philadelphia, including federal officers, to display "clear identifying information" of its employing entity that is "visible to individuals" when using a "vehicle in the course of official duties." Section 10-843(2)(d) requires law enforcement officers, including federal officers, to "identify themselves to a subject of arrest, holding or detention" and "provide identifying information upon request to the subject of an arrest after an arrest has been made."

Section 10-843(3)(b) provides an exception for these provisions "if the law enforcement officer is employed by a law enforcement agency that maintains and publicly posts a written policy pursuant to § 10-848" of Bill 260060. Any law enforcement officer who violates any of these subsections "while performing official duties and interacting with the public" shall be "guilty of criminal concealment" (a summary offense) and subject to a fine, imprisonment up to 90 days, or both, "in addition to any other penalties imposed." § 10-843(4). Section 2, § 10-845 of Bill 260060 is the civil analogue that repeats the prohibitions and exceptions of § 10-843 and provides a private right of action to the City Solicitor and private parties to enforce the above prohibitions and requirements against the officer's employing agency. Thus, §§ 10-843 and 10-845, as they pertain to federal officers and agencies, impermissibly regulate those officers in violation of the Supremacy Clause.

Similarly, Section 2, § 10-844 of Bill 260060 requires law enforcement officers in Philadelphia, including federal officers, to "[v]isibly display a badge, tag or label clearly identifying the name, rank, and entity that employs the law enforcement officer at all times." § 10-844(2)(a). It also requires law enforcement officers in Philadelphia, including federal officers, to "[i]dentify themselves to a subject of arrest, holding or detention" and "[p]roduce a badge, tag or

16

label upon request." § 10-844(2)(b)-(c). Lastly, § 10-844(2)(d) requires law enforcement officers, including federal officers, to clearly identify information of their employing entity that is "visible to individuals" when using a vehicle. Section 10-844(3) provides an exception for these provisions if the law enforcement officer is "employed by a law enforcement agency that maintains and publicly posts a written policy pursuant to Section 10-848."

Any law enforcement officer who violates any of these subsections "while performing official duties and interacting with the public" shall be "guilty of criminal concealment" (a summary offense) and subject to a fine, imprisonment of up to 90 days, or both, "in addition to any other penalties imposed." § 10-844(4). Section 2, § 10-846 of Bill 260060 is the civil analogue that repeats the prohibitions and exceptions of § 10-844 and provides a private right of action to the City Solicitor and private parties to enforce the above prohibitions and requirements against the officer's employing agency. Thus, §§ 10-844 and 10-846 as they pertain to federal officers and agencies, likewise impermissibly regulate those officers in violation of the Supremacy Clause.

As the Ninth Circuit observed with regard to a similar California law that sought to require federal law enforcement officers to "visibly display identification" when "performing their enforcement duties," Section 2 "seeks to control [federal officers'] conduct in performing law enforcement operations." *United States v. California*, 173 F.4th at 1067. The Ninth Circuit held that the challenged identification requirement "purports to override the federal government's power to determine whether, how, and when to publicly identify its officers[,]" "[a]nd in so doing, it aims to regulate the manner and conditions under which federal agents can enforce federal law." *Id.* That reasoning applies directly to the Philadelphia identification requirements in Section 2, §§ 10-843(2)(b)-(d) and 10-844(2) of Bill 260060, and applies with equal force to the facial covering ban and vehicle identification requirement. Each provision seeks to regulate the manner

17

and conditions under which federal officers must operate when conducting their official duties and enforcing federal law. *See id.* Neither states nor localities have the power to do that.

Federal law enforcement agencies enforce federal law throughout the United States and in doing so are generally not required to comply with individual state and local laws when operating within the scope of their official duties. *See, e.g.*, *Johnson*, 254 U.S. 51; *Davis*, 100 U.S. at 262-63 ("If, when . . . acting . . . within the scope of their authority, [federal] officers can be arrested and brought to trial in a State court, for an alleged offence against the law of the State . . . the operations of the general government may at any time be arrested at the will of one of its members."); *In re Neagle*, 135 U.S. 1, 75 (1890) ("[I]f the prisoner is held in the state court to answer for an act which he was authorized to do by the law of the United States, which it was his duty to do as marshal of the United States, and if, in doing that act, he did no more than what was necessary and proper for him to do, he cannot be guilty of a crime under . . . [state] law."); *CoreCivic, Inc.*, 145 F.4th 315, 327 (3d Cir. 2025) (finding that a state law "directly regulates the federal government by substantially interfering with a core federal function").

Moreover, a state or local law that directly regulates the conduct of the federal government or discriminates against it is invalid." *CoreCivic, Inc.*, 145 F.4th at 331. And "Supreme Court case law compels the rejection of a *de minimis* exception to the doctrine of intergovernmental immunity." *United States v. California*, 921 F.3d 865, 883 (9th Cir. 2019); *see New Jersey v. U.S. Dep't of Treasury*, 684 F.3d at 412 (finding "direct regulation of the Federal Government" regardless of whether states intended to enforce penalties). It is an unconstitutional and burdensome regulation on the Federal Government to have its officers and agencies face potential criminal and civil liability, respectively, from state and local officials, who have no authority to prosecute or penalize federal officers for actions taken in the performance of their duties. *See New*

18

*Jersey v. U.S. Dep't of Treasury*, 684 F.3d at 412-13; *United States v. California*, 173 F.4th at 1067-68 (holding state law invalid because it "purports to override the federal government's power to determine whether, how, and when to publicly identify its officers" and thus "directly regulates inherently governmental conduct of federal officers carrying out their duties *under federal authority*") (emphasis in original)).

Section 2 thus violates the Supremacy Clause. By dictating if and when federal officers may wear facial coverings and what identification they must display or provide while carrying out their official duties—whether on their person or vehicle, or to subjects of arrests, holdings, or detentions, or other members of the public upon request—the Bill improperly seeks to regulate how the Federal Government carries out its criminal and civil law enforcement functions. Indeed, Bill 260060 concedes as much. *See* Section 1(1) ("It is the intent of this Council to define the structure of the scope of duty, as well as substantive obligations of . . . federal law enforcement operating within the jurisdiction of the City of Philadelphia."). Accordingly, the challenged provisions are facially invalid and unconstitutional as they pertain to federal law enforcement officers and agencies, and their enforcement against such federal officers and agencies should be enjoined.

Defendants may argue that to prevail, the United States must show that enforcement of the Bill would hinder Federal Government operations. Not so. Of course, hindering core Federal Government operations is one way to show that a state or locality has engaged in impermissible direct regulation of the Federal Government, and Philadelphia's ordinance does so, as explained further below. *See Pub. Utils. Comm'n of State of Cal. v. United States*, 355 U.S. 534, 543 (1958) (holding that a state law that barred federal officials from hiring shipping contractors without state approval violated intergovernmental immunity where the law would have delayed shipments,

19

thereby hampering military missions); *California*, 921 F.3d at 880 (explaining that intergovernmental immunity is implicated when a state "burden[s] [the Federal Government] in some way"). As the Third Circuit pointed out, if the state's law "carries the same sting as a law whose text applies expressly to the federal government" then "the direct-regulation prong accommodates that functionalist reading of what is really going on." *CoreCivic, Inc.*, 145 F.4th at 322 (finding that a state law "directly regulates the federal government by substantially interfering with a core federal function"). The Supreme Court has long held that states cannot regulate the federal government itself. *Id*. at 327 (citing *Osborn v. Bank of U.S.*, 22 U.S. (9 Wheat.) 738, 786-89, 866-67 (1824) (noting that states cannot "control" federal operations by regulating its contractors); *see United States v. California*, 173 F.4th at 1067 ("[I]f a state law directly regulates the conduct of the United States, it is void irrespective of whether the regulated activities are essential to federal functions or operations, and irrespective of the degree to which the state law interferes with federal functions or operations.").

Bill 260060's written policy exceptions confirm rather than cure its constitutional defects. §§ 10-843(3)(b), 10-844(3), 10-845(3)(b), 10-846(3). To qualify, Philadelphia purports to require federal law enforcement agencies operating in the City to "maintain and publicly post a written policy prohibiting officers from concealing their identity, and requiring officers to visibly display their badge and other official identifying information, when performing enforcement duties." § 10-848(1). The policy shall include, for example, a commitment to the Bill's prescribed objectives, restricting officers from using facial coverings except in narrowly defined circumstances, and prohibiting supervisors from "knowingly allow[ing] a law enforcement officer under their supervision to violate agency policy limiting the use of a facial covering or requiring the visible display of identification." § 10-848(2)(c). In other words, Philadelphia purports to offer relief from

20

criminal and civil liability under certain circumstances only on the condition that federal agencies restructure their internal policies to satisfy local requirements and post them publicly. That is likewise a direct regulation of the Federal Government: how federal agencies organize and disclose their internal operations is a matter for Congress and the Executive Branch, not the City of Philadelphia; and when noncompliance with municipal standards means criminal and civil enforcement against federal officers and agencies, the availability of an exception does not transform compulsion into a genuine choice.

For these reasons, the United States is likely to succeed on the merits. *See KalshiEX, LLC v. Flaherty*, 172 F.4th 220, 226 (3d Cir. 2026) (quoting *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 380 (3d Cir. 2021)) (stating that "the moving party must show . . . 'there is a reasonable chance, or probability, of winning'").

## V.    The United States Faces Irreparable Harm Absent Preliminary Relief

The United States will suffer irreparable harm if Bill 260060 is enforced against the Federal Government. Irreparable harm necessarily results from the enforcement of a state or local law that violates the Supremacy Clause. *See New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 366-67 (1989) (noting that irreparable injury may be established "by a showing that the challenged state statute is flagrantly and patently violative of . . . the express constitutional prescription of the Supremacy Clause" (citation omitted)); *United States v. California*, 173 F.4th at 1069 (finding irreparable harm based on a Supremacy Clause violation); *United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2011) (same), *aff'd in part, rev'd in part and remanded*, 567 U.S. 387 (2012).

The automatic nature of the irreparable injury stems both from the constitutional violation and the sovereign injuries that result. *United States v. California*, 173 F.4th at 1069. And

21

"[g]ranting the preliminary injunction would not result in a greater harm to the State because the State 'does not have an interest in the enforcement of an unconstitutional law.'" *New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 388–89 (3d Cir. 2012) (quoting *Am. Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003)). Thus, the United States satisfies this element of the preliminary injunction standard. *See United States v. Connecticut*, 566 F. Supp. 571, 579 (D. Conn. 1983) (concluding "without hesitation that the United States has shown that it will be irreparably injured by the continuing violation of . . . a Federal statute, that would result from failure to enjoin enforcement of the Connecticut statute"), *aff'd without opinion*, 742 F.2d 1443 (2d Cir. 1983), *aff'd without opinion*, 465 U.S. 1014 (1984).

Even if more were needed, Section 2 of the Bill poses several additional irreparable harms, including endangering federal law enforcement officers, impeding their functions, and chilling federal activities. For instance, these provisions, by design, endanger federal officers because they seek to publicly expose their personal identities at a time of already escalating instances of violence against federal officers. *See, e.g.*, Hargis Decl. ¶¶ 6-12. The exposure would facilitate escalating instances of harassment against those officers by agitators seeking to disrupt their operations. *See* Jacobs Decl. ¶¶ 9-12; Hodnett Decl. ¶ 18; Hargis Decl. ¶¶ 16-18. For example, ICE officers are facing an 8,000% increase in death threats and more than a 1,000% increase in assaults, which are facilitated by doxxing websites that broadcast the identities and home addresses of officers and their families, encouraging retaliation against them. *See, e.g.*, Rife Decl. ¶ 21 (describing threats against ICE officers). CBP has also seen a significant rise in assaults against officers and agents since January 2025. Hargis Decl. ¶ 6.

Section 2 of the Bill also impedes federal functions because it fails to sufficiently account for instances in which federal officers may interact with the public when performing their official

22

duties, but disclosure of their identities could place them or others at risk, including, for example, surveillance or protection assignments, which will jeopardize such operations. *See* Jacobs Decl. ¶ 12; Hodnett Decl. ¶ 19; Hargis Decl. ¶¶ 13-20. Agents in such situations face a risk of prosecution for merely doing their jobs in an inconspicuous manner as is called for by such scenarios. Further, the challenged provisions would enable suspects to identify officers who may be involved in future enforcement actions, including undercover operations. *See, e.g.*, Jacobs Decl. ¶ 12; Hodnett Decl. ¶¶ 16-20; Hargis Decl. ¶ 18. Because suspects who recognize officers may try to evade apprehension and obstruct enforcement efforts, the discretion to modify uniforms and vehicles to protect officers and agents' identities is critical for maintaining operational effectiveness, especially in areas where repeat offenders or organized criminal networks are prevalent. *See, e.g.*, Jacobs Decl. ¶ 12; Hodnett Decl. ¶¶ 8, 16-21.

To protect officers' identities and help ensure mission success, federal agencies routinely deploy unmarked vehicles as a critical and congressionally sanctioned tool for conducting undercover operations, surveillance, and other sensitive law enforcement activities. *See* Rife Decl. ¶¶ 19, 30; Hargis Decl. ¶¶ 13, 20; 41 C.F.R. § 102-34.155(a) ("Motor vehicles used primarily for investigative, law enforcement, intelligence, or security duties have an unlimited exception from displaying U.S. Government license plates and motor vehicle identification when identifying these motor vehicles would interfere with those duties."); 41 C.F.R. § 102-34.175 (same); *see generally* 28 U.S.C. § 533 (authorizing the Attorney General to appoint officials to conduct investigations and detect crimes against the United States). The use of unmarked vehicles in these missions in Philadelphia is essential to their success and to the safety of officers conducting them, as well as the general public.

Further still, due to the nature of law enforcement operations, officers require flexibility to determine when to announce their identities. To this end, CBP and ICE have discretion on when they permit their officers and agents to wear facial coverings and remove individual identifiers. They also allow officers discretion as to when and what information is provided to a subject of arrest, holding, or detention. For instance, federal regulations provide that "an immigration officer who is authorized to execute an arrest" shall announce themselves and the purpose of the arrest "as soon as it is practical and safe to do so." 8 C.F.R. § 287.8(c)(2)(iii). That is up to each officer based on the facts and circumstances in a particular case and cannot be subjected to bright-line or conflicting local rules or subject to criminal and civil liability. Removing this flexibility and requiring federal officers to identify themselves to a subject of arrest, holding, or detention or produce a badge to any member of the public upon request would undermine officer safety and operational effectiveness, particularly when the consequence of noncompliance is not only civil but also criminal prosecution and potential imprisonment.

Accordingly, once officer safety or the integrity of an operation is compromised, the harm cannot be undone. And while there are limited exceptions to the challenged provisions of Bill 260060, they would require federal agencies to develop and publicly post a written policy compliant with the City's requirements, and it is unclear who determines whether those requirements are even met. §§ 10-843(3)(b), 10-844(3), 10-845(3)(b), 10-846(3), 10-848.

Compliance with the challenged provisions would prevent federal agents and officers from effectively engaging in important federal enforcement operations. *See* Jacobs Decl. ¶ 12; Hodnett Decl. ¶¶ 19, 21. And because Section 2 of Bill 260060 carries criminal and civil penalties, the threat of such liability can chill officers from engaging in lawful conduct in the performance of their federal duties in Philadelphia, particularly because compliance will endanger officers and

24

limit their federal functions. *See New York v. Tanella*, 374 F.3d 141, 147 (2d Cir. 2004) (stating that the federal immunity defense provides "immunity from suit rather than a mere shield against liability," to "protect[] federal operations from the chilling effect of state prosecution"). So too with the Bill's civil liabilities. Thus, officers may self-censor, alter their conduct, or assume unreasonable risks to themselves to avoid exposure, and that risk to officer safety or operational disruption creates immediate and concrete harm that cannot be remedied after the fact.

For these reasons, the challenged provisions threaten to "destroy the federal function" of law enforcement in Philadelphia. *United States v. Fresno Cnty.*, 429 U.S. 452, 463 n.11, 464 (1977). Because the Framers of our Constitution "did not intend" for federal operations to "depend on the discretion of the state governments," *McCulloch*, 17 U.S. (4 Wheat.) at 327, 362, the City of Philadelphia cannot unilaterally impose its policy preferences on the Federal Government. A "concurrent power in the [S]tates" to regulate federal operations "would bring back all the evils and embarrassments, which the uniform rule of the [C]onstitution was designed to remedy." 2 J. Story, Commentaries on the Constitution § 1099 (3d ed. 1858).

Finally, allowing a municipality to criminalize federal officer conduct and impose civil penalties against the employing agency sets a precedent that would fragment federal operations across jurisdictions nationwide. Indeed, if the Bill were allowed to stand, there would be nothing to stop other municipalities and states from imposing further unconstitutional restraints on the Federal Government. *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 373 (2008) (allowing a state to act unconstitutionally "would allow other States to do the same"). This could in turn create a "patchwork" system of laws, *id.*, under which federal agents would be subject to different regulations in each municipality and state, severely undermining the Federal Government's ability to uniformly enforce federal law. As this Circuit has opined, "[t]hat is a big step down a slippery

slope." *Corecivic, Inc.*, 145 F.4th at 328 ("Even a patchwork of such state laws 'would defeat all the ends of government.' States may not do that.") (internal citation omitted). Take, for example, a violent gang investigation where federal agents conduct surveillance to observe a drug transaction in a high crime area within the City limits, taking precautions to avoid compromising their safety or the ongoing investigation, such as using an unmarked vehicle and without wearing identification. Not only would Philadelphia criminalize and impose civil liability for those precautionary aspects of the operation, but if a suspect approaches the agents and requests them to produce their badges, Philadelphia would criminalize and impose civil liability for the agents' failure to do that as well. Each federal agent involved, it would appear, would be exposed to upwards of 450 days of jailtime and $1,500 in fines, and the employing agency would be exposed to $10,000 in civil penalties for each agent's violations, in addition to other penalties. *See* §§ 10-843(4), 10-844(4), 10-845(4)-(5), 10-846(4)-(5). Not only that, but Philadelphia would apparently impose those penalties anew for each day the unidentified agents took the same precautions during the operation. *See id.* This demonstrates the radical and dangerous implications of the Bill.

Philadelphia is not alone in attempting to subject federal law enforcement officers to regulation of this kind. *See, e.g.*, *United States v. California*, 819 F. Supp. 3d 1109, 1134 (C.D. Cal. 2026) (finding irreparable harm from California law imposing facial covering ban for federal officers). But that growing patchwork of unconstitutional regulations only further demonstrates that the United States faces irreparable harm from Bill 260060.

## VI.    The Balance of Hardships and the Public Interest Weigh in the United States' Favor

The merged factors of the balance of equities and the public interest likewise favor the United States. *See Nken v. Holder*, 556 U.S. 418, 435 (2009); *KalshiEX*, 172 F.4th at 225; *see also Sec. & Exch. Comm'n v. Chappell*, 107 F.4th 114, 139 (3d Cir. 2024) ("As a practical matter, if a

plaintiff demonstrates both likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff.") (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994)). As an initial matter, "granting a preliminary injunction would be in the public's interest" because "the public interest [is] not served by the enforcement of an unconstitutional law." *New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 389 (3d Cir. 2012) (alteration in original) (quoting *Am. Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003); *United States v. California*, 173 F.4th at 1069 (stating that a violation of the Supremacy Clause necessarily means that "both the public interest and balance of the equities tip 'decisively in . . . favor' of a preliminary injunction.").

Just as in *United States v. California*, there is no public interest in a state or locality violating the Supremacy Clause by directly regulating federal law enforcement. There is, however, significant public interest in protecting federal officers' safety and removing unlawful impediments to federal law enforcement operations. Indeed, "[f]rustration of federal statutes and prerogatives are not in the public interest[.]" *United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012); *see Am. Fin. Servs. Assn. v. Burke*, 169 F. Supp. 2d 62, 71 (D. Conn. 2001) (finding that "while the efforts of the Connecticut legislature to curb 'predatory lending' practices . . . may be admirable and important, until Congress limits the enforceability of arbitration clauses in certain contexts, the Court must follow the [Federal Aviation Administration's] broad mandate providing for the enforcement of such clauses.").

Further, it is not in the public interest to require federal officers to comply with varying state and local standards for facial coverings and identification of officers and vehicles when the federal policy is designed to comply with federal law. Likewise, it is not in the public interest to

subject federal officers to increased harassment, doxxing, and violence, which can impact not only their official duties but also their personal lives and families. Thus, the balance of equities weighs in favor of the United States. The aim of Philadelphia's ordinance is to hinder federal agents from participating in crucial law enforcement operations in the city and to chill effective enforcement of federal law. Such obstructionism is not in the public interest. Rather, the public has a strong interest in preserving constitutional order and effective federal law enforcement, including drug enforcement, as well as immigration and counterterrorism operations conducted in Philadelphia, and the City's residents benefit from federal law enforcement presence and operations that would otherwise be chilled or curtailed by enforcement of the ordinance.

Moreover, preliminarily enjoining the ordinance will not cause greater harm to Defendants. Federal officers and agencies face criminal and civil liability, respectively, and operational disruption upon the effective date of Bill 260060, while an injunction would merely preserve the status quo as the City of Philadelphia faces only a delay in enforcing a newly enacted ordinance it has managed without until now. *See Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708, 730 (3d Cir. 2004). Since Philadelphia can pursue accountability objectives through means that do not unconstitutionally regulate federal officers, the hardship of enjoining this specific mechanism is minimal. And while Philadelphia may disagree with the United States' priorities, it has no legitimate interest in interfering with the enforcement of federal law or putting federal officers at risk. Thus, not only does the balance of equities support a preliminary injunction, but the public interest would be served by the issuance of such an injunction. *See Mayo*, 319 U.S. at 445 ("No other adjustment of competing enactments or legal principles is possible.").

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court preliminarily enjoin the Defendants, as well as their officers, agents, servants, employees and attorneys, and all those working in concert or participation with them, from enforcing Section 2 of Bill 260060 as to federal agencies and officers.

DATED: June 18, 2026                                Respectfully submitted,

STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANNA EDWARDS
Counsel to the Associate Attorney General

CHARLES E.T. ROBERTS
Counsel to the Assistant Attorney General
Civil Division

*/s/ Pooja D. Majmundar*
POOJA D. MAJMUNDAR (DC Bar No. 1779930)
BRONWYN H. NAYCI (FL Bar No. 1018924)
Trial Attorneys
U.S. Department of Justice, Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, D.C. 20044-0386
(202) 598-0280
Pooja.D.Majmundar@usdoj.gov

*Attorneys for the United States of America*

29

**CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2026, I caused the foregoing Motion for Preliminary

Injunction and accompanying attachments to be served upon the following via electronic mail, as

Defendants' counsel have not yet appeared in this matter:

Renee Garcia
City Solicitor
City of Philadelphia
renee.garcia@phila.gov

Meghan Goddard
First Deputy City Solicitor
City of Philadelphia
Meghan.Goddard@phila.gov

/s/ Pooja Majmundar
Pooja Majmundar
Trial Attorney
U.S. Department of Justice, Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, DC 20044-0386
Telephone: (202) 598-0280
Email: Pooja.D.Majmundar@usdoj.gov

1