**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF PHILADELPHIA; CHERELLE PARKER, Mayor of Philadelphia, in her official capacity; LAWRENCE KRASNER, District Attorney of Philadelphia, in his official capacity; MONIQUE MYATT GALLOWAY, Acting City Solicitor of Philadelphia, in her official capacity,<br><br>Defendants. | Case No. 2:26-cv-4208 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**COUNTS I AND II IN THE AMENDED COMPLAINT**

Dated: September 22, 2026

**BALLARD SPAHR LLP**

David L. Axelrod, ID 323792
Facundo Bouzat, ID 335101
J. Chesley Burruss, ID 331521
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215.665.8500
Facsimile: 215.864.8999
axelrodd@ballardspahr.com
bouzatf@ballardspahr.com
burrussc@ballardspahr.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

PAGE

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

1. The Challenged Ordinance. ........ 2

2. Procedural History. ........ 3

III. ARGUMENT ........ 4

1. Counts I and II Should Be Dismissed Because Plaintiff's Preemption Claims Run Afoul of the Tenth Amendment's Anticommandeering Doctrine ........ 4

2. Count I Should Be Dismissed Because Sections 1373 and 1644 Do Not Expressly Preempt the Challenged Ordinance ........ 7

3. Count II Should Be Dismissed Because the Challenged Ordinance Is Not Conflict Preempted. ........ 10

IV. CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona v. United States*,
567 U.S. 387 (2012)....................14

*Chamber of Com. of U.S. v. Whiting*,
563 U.S. 582 (2011)....................11

*Circuit City Stores, Inc. v. Citgo Petrol. Corp.*,
No. 92-CV-7394, 1994 WL 483463 (E.D. Pa. Sept. 7, 1994)....................1

*City of Phila. v. Att'y Gen. of United States*,
916 F.3d 276 (3d Cir. 2019)....................13

*Cnty. of Ocean v. Grewal*,
475 F. Supp. 3d 355 (D.N.J. 2020)....................9

*Colorado v. United States Dep't of Just.*,
455 F. Supp. 3d 1034 (D. Colo. 2020)....................8

*Galarza v. Scalcyzk*,
745 F.3d 634 (3d Cir. 2014)....................6, 13, 15

*Guerrero-Sanchez v. Warden York Cnty. Prison*,
905 F.3d 208 (3d Cir. 2018)....................15

*Kansas v. Garcia*,
589 U.S. 191 (2020)....................11

*MD Mall Assocs. v. CSX Transp.*,
715 F.3d 479 (3d Cir. 2013)....................11

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
584 U.S. 453 (2018)....................4, 7, 8

*New York v. United States*,
505 U.S. 144 (1992)....................5, 6

*Ocean Cnty. Bd. of Comm'rs v. Att'y Gen. of State of New Jersey*,
8 F.4th 176 (3d Cir. 2021)....................2, 7, 8, 11

*Printz v. United States*,
521 U.S. 898 (1997)....................5

*St. Thomas—St. John Hotel & Tourism Ass'n, Inc. v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232 (3d Cir. 2000) ....................8

*Steinle v. City & Cnty. of San Francisco*, 230 F. Supp. 3d 994 (N.D. Cal. 2017) ....................9

*Transcon. Gas Pipe Line Co., LLC v. Pa. Env't Hearing Bd.*, 108 F.4th 144 (3d Cir. 2024) ....................11

*United States v. California*, 921 F.3d 865 (9th Cir. 2019) ....................5, 9, 13, 14

*United States v. Cnty. of Washtenaw*, No. 26-11166, 2026 WL 2453724 (E.D. Mich. Aug. 21, 2026) ....................9, 13, 14

*United States v. Illinois*, 796 F. Supp. 3d 494 (N.D. Ill. 2025) ....................5, 8, 12, 14

*United States v. Minnesota*, No. 25-CV-3798, 2026 WL 2085701 (D. Minn. July 20, 2026) ....................10, 13

*United States v. New York*, 810 F. Supp. 3d 329 (N.D.N.Y. 2025) ....................5, 9, 15

*United States v. Sherrill*, No. 26-1770, 2026 WL 2621025 (D.N.J. Sept. 4, 2026) ....................5, 6, 7, 13

**Other Authorities**

8 U.S.C. § 1103 ....................10, 12

8 U.S.C. § 1225 ....................10, 12

8 U.S.C. § 1226 ....................10, 12, 13

8 U.S.C. § 1231 ....................10, 12, 13

8 U.S.C. § 1324 ....................10, 14

8 U.S.C. § 1357 ....................10, 11, 12

8 U.S.C. § 1373 .................... *passim*

8 U.S.C. § 1644 .................... *passim*

8 C.F.R. § 287.7 ....................10, 11, 12, 13

## I. INTRODUCTION

This Motion seeks dismissal of Counts I and II in the Amended Complaint.[2] ECF No. 32. Those counts challenge the validity of Section 21-3604(4) in Bill No. 260059 (the "Challenged Ordinance"). Consistent with their governing authority, the Philadelphia City Council passed, and the Mayor approved, the Challenged Ordinance to prevent the federal government from compelling local officials and resources to assist with federal immigration enforcement. The Challenged Ordinance reflects that policy choice by instructing City agencies and employees to refuse immigration detainer requests, *i.e.*, requests by federal immigration authorities to keep individuals in custody beyond their release date. In Counts I and II, Plaintiff argues the Challenged Ordinance is preempted by the Immigration and Nationality Act ("INA") and an implementing regulation. This Court should dismiss these claims because they lack merit as a matter of law and, indeed, run headlong into binding precedent that has rejected them.

*First*, Plaintiff's view that certain provisions of the INA and its implementing regulations *require* the City to assist federal agents in enforcing federal immigration law is fundamentally at odds with this country's constitutional system of dual sovereignty and the Tenth Amendment's anticommandeering doctrine. Consistent with these foundational principles, the federal government cannot conscript City employees as its agents, including by ordering them to keep an individual in custody, solely to assist with federal immigration enforcement. This argument is not novel. Courts have consistently held that the federal government cannot constitutionally prevent states and localities from enacting policies—like the Challenged Ordinance—that govern their

[2] Defendants intend to answer the remaining counts upon the Court's resolution of this Motion. *See Circuit City Stores, Inc. v. Citgo Petrol. Corp.*, No. 92-CV-7394, 1994 WL 483463, *4 (E.D. Pa. Sept. 7, 1994) ("A partial 12(b) motion enlarges the time to file an answer.").

voluntary participation in federal immigration enforcement. Because Counts I and II both rest on an interpretation of the law that violates the Tenth Amendment, the Court should dismiss them.

*Second*, anticommandeering principles aside, Counts I and II fail to state preemption claims on the merits. Nearly all of the INA provisions and implementing regulations that Plaintiff invokes do *not* regulate private actors. The Third Circuit has rejected preemption claims premised on the same INA provisions for this exact reason—because only federal laws that regulate private actors can have preemptive effect. *See Ocean Cnty. Bd. of Comm'rs v. Att'y Gen. of State of New Jersey*, 8 F.4th 176 (3d Cir. 2021) (hereinafter "*Ocean Cnty.*"). Plaintiff tacitly concedes that *Ocean County* is fatal to its claims when it dismisses the Third Circuit's published opinion as "wrongly decided." Am. Compl. ¶ 20, n.1. Further, the provisions that Plaintiff claims have preemptive effect do not in fact conflict with the Challenged Ordinance. Plaintiff cannot identify a single provision in the INA that *mandates* the City to comply with an immigration detainer request or administrative warrant. And the INA provisions that govern the sharing of information regarding immigration status—8 U.S.C. §§ 1373 and 1644—are inapposite because the Challenged Ordinance does not apply to such information. Plaintiff's preemption claims thus fail.

For these reasons and those that follow, Defendants respectfully request that the Court dismiss Counts I and II with prejudice as no amendment could cure their legal deficiencies.

## II. BACKGROUND

### 1. The Challenged Ordinance.

Bill No. 260059 was passed by the Philadelphia City Council on April 23, 2026, and signed by the Mayor on May 7. *See* Am. Compl. Ex. A at 1, 8. Relevant here, the federal government challenges Section 21-3604(4) of the Bill, which states:

> No City agency, official, or employee shall stop, arrest, detain, or continue to detain a person after that person becomes eligible for release from custody or would otherwise be free to leave an encounter with an agency, official, or employee, based

> on any of the following: (a) An immigration detainer; (b) An administrative warrant; or (c) Information or suspicion that a person is not legally present in the United States, or that the person has committed an immigration violation, or suspicion of violating [certain federal statutory provisions].

*Id.* § 21-3604(4). The Challenged Ordinance defines an "immigration detainer request" as a "request by a federal immigration enforcement agent to a federal, state, or local law enforcement agency that the law enforcement agency provide notice of release or maintain custody of an individual for purposes of civil immigration law enforcement." *Id.* § 21-3604(1)(d). The Challenged Ordinance does not restrict the sharing of information regarding the citizenship or immigration status of an individual.

The Challenged Ordinance explains that it should not be construed to restrict compliance with any "mandatory" obligations that arise under federal or state law: "(a) Nothing in this Chapter shall prohibit City Agencies or Employees from cooperating with federal authorities in the investigation or prosecution of criminal activity when required by law. (b) Nothing in this Chapter shall be construed to restrict compliance with federal or state law where such compliance is mandatory." *Id.* § 21-3604(16).

**2. <u>Procedural History.</u>**

Plaintiff filed this action on June 18, 2026, asserting four counts for violation of the Supremacy Clause for each of Sections 10-843 through 10-846 of Bill 260060. *See* Compl. ¶¶ 81-111, ECF No. 1. Plaintiff did not identify, let alone challenge, any provision of Bill No. 260059 in its original complaint. On July 2, the Court preliminarily enjoined Defendants "from implementing or enforcing Section 2, § 10-843, § 10-844, § 10-845, § 10-846 of Philadelphia City Council Bill 260060 as to federal agencies and officers." Order, ECF No. 22. Defendant District Attorney

Krasner filed an Answer to the original complaint on August 3, ECF No. 30, and the remaining Defendants filed an Answer to the original complaint on August 21, ECF No. 31.

On August 24, Plaintiff filed the Amended Complaint. The Amended Complaint includes the same four counts asserting that Bill 260060 violates the Supremacy Clause, Counts III through VI.[3] *See* Am. Compl. ¶¶ 107-39. Additionally, the Amended Complaint sets forth two new counts challenging a single provision, Section 21-3604(4), of Bill 260059: (1) Count I asserts that the Challenged Ordinance is expressly preempted by certain provisions of the INA, and (2) Count II asserts that the Challenged Ordinance is conflict preempted under certain INA provisions and an implementing regulation. *Id.* ¶¶ 93-106. Defendants now move to dismiss Counts I and II of the Amended Complaint.

## III. ARGUMENT

### 1. Counts I and II Should Be Dismissed Because Plaintiff's Preemption Claims Run Afoul of the Tenth Amendment's Anticommandeering Doctrine.

Counts I and II are premised on Plaintiff's unfounded view that federal law *requires* the City to aid in its enforcement of federal immigration law, namely, by maintaining individuals in custody beyond their eligible release dates, pursuant to immigration detainers and administrative warrants. Plaintiff's reading of the INA's provisions and its implementing regulations violates the anticommandeering doctrine of the Tenth Amendment.

The Constitution gives Congress "certain enumerated powers," and reserves "all other legislative power . . . for the States, as the Tenth Amendment confirms." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 471 (2018). Congress does not have "the power to issue direct orders to the governments of the states." *Id.* "The anticommandeering doctrine simply

---

3 Count VI is incorrectly titled "Count VII," as the Amended Complaint confirms there are only six counts. *See* Am. Compl. ¶¶ 132-33.

represents the recognition of this limit on congressional authority." *Id.* This foundational governing principle "prevents Congress from shifting the costs of regulation to the States" and makes clear which entity is responsible for a policy so that voters "know who to credit or blame." *Id.* at 473-74. "Where a federal interest is sufficiently strong to cause Congress to legislate, it must do so directly; it may not conscript state governments as its agents." *New York v. United States*, 505 U.S. 144, 178 (1992). *See also Printz v. United States*, 521 U.S. 898, 922 (1997) ("The power of the Federal Government would be augmented immeasurably if it were able to impress into its service—and at no cost to itself—the police officers of the 50 States.").

Courts have repeatedly invoked the anticommandeering doctrine in holding that the federal government would violate the Tenth Amendment if it could require state and local governments to assist with federal immigration enforcement, including by mandating compliance with immigration detainers. *See, e.g.*, *United States v. Sherrill*, No. 26-1770, 2026 WL 2621025, at *9 (D.N.J. Sept. 4, 2026) ("[I]f the INA's detainer provisions provided a basis for preemption, the result would be that the detainers were mandatory in violation of the anticommandeering doctrine."); *United States v. New York*, 810 F. Supp. 3d 329, 350 (N.D.N.Y. 2025) ("[T]he Tenth Amendment prohibits Congress from conscripting state and local officials and resources to assist with federal regulatory schemes, like immigration enforcement."); *United States v. California*, 921 F.3d 865, 891 (9th Cir. 2019) ("[The state] has the right, pursuant to the anticommandeering rule, to refrain from assisting with federal efforts."); *United States v. Illinois*, 796 F. Supp. 3d 494, 523 (N.D. Ill. 2025) (restricting local governments from being able to "affirmatively opt-out of enforcing federal immigration laws" "conflicts with the guiding principle of anticommandeering: knowing and voluntary cooperation").

In *Galarza*, for example, the Third Circuit addressed whether the defendant county could use the issuance of a federal immigration detainer request to justify the detention of the plaintiff beyond his release date. *See Galarza v. Scalcyzk*, 745 F.3d 634 (3d Cir. 2014). The Third Circuit rejected the defendant county's argument that immigration detainers were mandatory under federal regulations, reasoning in part that the "conclusion that a detainer issued by a federal agency is an order that state and local agencies are compelled to follow, is inconsistent with the anti-commandeering principle of the Tenth Amendment." *Id.*

The *Sherrill* case presents almost identical facts to the case at hand and relied on the precedent set in *Galarza*. *See Sherrill*, 2026 WL 2621025, at *9 (citing *Galarza* in concluding the federal government's reading of the INA's detainer provisions would "violat[e] the anticommandeering doctrine"). There, the Governor of New Jersey enacted New Jersey Executive Order 12, which provided that "executive branch departments and agencies shall not permit or consent to federal immigration officers entering, accessing, or using nonpublic areas of State property for the purposes of facilitating federal enforcement of civil immigration law." *Id.* at *1 (cleaned up). The federal government brought suit, as it has here, asserting federal preemption. In granting New Jersey's motion to dismiss, the court reasoned that the federal government's efforts to invalidate New Jersey's Executive Order "would run afoul of the anticommandeering doctrine because those laws would 'conscript state governments as its agents' in immigration enforcement." *Id.* at *11 (quoting *New York*, 505 U.S. at 178).

The same is true here. The Challenged Ordinance reflects the City's policy determination as to issues solely within its control, namely, its voluntary participation in federal immigration enforcement. Plaintiff's interpretation of the INA and its implementing regulations, however, purports to bar the City from making those policy decisions. Plaintiff's reading of the INA would

*commandeer* the City and its employees in furtherance of the federal government's immigration policies. Such an interpretation, if embraced, would clearly violate anticommandeering doctrine because it "unequivocally dictates what [the City] may and may not do." *See Murphy*, 584 U.S. at 474.

Because Counts I and II rely on an interpretation of the INA and its implementing regulations that violates the Tenth Amendment, Plaintiff's preemption claims based on those statutory and regulatory provisions should be dismissed.

**2. Count I Should Be Dismissed Because Sections 1373 and 1644 Do Not Expressly Preempt the Challenged Ordinance.**

Anticommandeering principles aside, Plaintiff does not state a plausible claim under a theory of express preemption. In Count I, Plaintiff asserts that 8 U.S.C. §§ 1373 and 1644 expressly preempt the Challenged Ordinance because those statutes prohibit state and local governments from restricting the sharing of an individual's immigration information with the federal government. This argument fails as a matter of law for two reasons.

*First*, Sections 1373(a) and 1644 do not have preemptive effect. "[E]very form of preemption is based on a federal law that regulates the conduct of private actors, not the States." *See Murphy*, 584 U.S. at 479. Accordingly, the Third Circuit has made clear that for a federal law to have preemptive effect, it must, inter alia, "be best read as one that regulates private actors." *See Ocean Cnty.*, 8 F.4th at 181 (quotations omitted).

Directly on point is *Ocean County*, where the Third Circuit held that Sections 1373 and 1644—the exact same statutes at issue here—do *not* regulate "private actors." *See Ocean Cnty.*, 8 F.4th at 182 ("[W]e conclude that § 1644, like § 1373, regulates states, not private actors."). Other courts agree. *See also Sherrill*, 2026 WL 2621025, at *7 ("[T]he Third Circuit has expressly held that because 'neither § 1373 nor § 1644 regulates private actors,' those provisions 'cannot serve

as a basis for preemption.'" (quoting *Ocean Cnty.*, 8 F.4th at 178-79, 182)); *Illinois*, 796 F. Supp. 3d at 524-25 (collecting cases, holding "[Sections] 1373 and 1644 are not valid preemptive provisions, as they regulate States and local governments, but not private actors"); *Colorado v. United States Dep't of Just.*, 455 F. Supp. 3d 1034, 1059 (D. Colo. 2020) ("By their plain terms, the provisions [1373 and 1644] affect state and local government entities and officials; they do not regulate private actors as *Murphy* requires for preemption.").

By their plain terms, Sections 1373(a) and 1644 do not regulate private actors. Section 1373(a) provides that "a Federal, State, or local *government entity or official* may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the [federal government] information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a) (emphasis added). As the Third Circuit has held, Section 1373 "is a clear prohibition on *state* action; it says nothing about private actors, so it cannot be fairly read to regulate them." *Ocean Cnty.*, 8 F.4th at 181-82. Similarly, Section 1644 provides that "no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from the [federal government] information" regarding a noncitizen's "immigration status." 8 U.S.C. § 1644. The Third Circuit has likewise held that this language does *not* apply to private actors. *See Ocean Cnty.*, 8 F.4th at 182 ("[T]he best reading of the provision is that it does not regulate private actors."). Because Sections 1373(a) and 1644 do not regulate private actors, they do not have preemptive force. That is fatal to Count I.

*Second*, even if Sections 1373(a) and 1644 applied to private actors (they do not), Count I still does not make out an express preemption claim. Express preemption "arises when there is an explicit statutory command that state law be displaced." *St. Thomas—St. John Hotel & Tourism Ass'n, Inc. v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232, 238 (3d Cir. 2000). Here, the text of

Sections 1373(a) and 1644 do not evince a Congressional intent to displace ordinances like the Challenged Ordinance. Sections 1373(a) and 1644 govern the exchange of information regarding citizenship or immigration status. *See* 8 U.S.C. §§ 1373(a), 1644. *See also California*, 921 F.3d at 891-92 (holding "the phrase 'information regarding the citizenship or immigration status, lawful or unlawful, of any individual' is naturally understood as a reference to a person's legal classification under federal law"; "immigration status is the extent of subpart (a) [of Section 1373]"); *United States v. Cnty. of Washtenaw*, No. 26-11166, 2026 WL 2453724, at *10 (E.D. Mich. Aug. 21, 2026) ("Courts have uniformly held that information regarding immigration status in § 1373 encompasses only an individual's category of presence in the United States." (cleaned up; quotations omitted)); *New York*, 810 F. Supp. 3d at 349-50 (similar).

Nothing in the language of Sections 1373(a) and 1644 reflects an intent to displace local laws, like the Challenged Ordinance, that preclude city agencies and employees from complying with immigration detainers or administrative warrants. *See* Am. Compl. Ex. A., § 21-3604(4). Conversely, the Challenged Ordinance does not restrict the sharing of an individual's immigration status. Accordingly, there is no conflict on which to premise a preemption claim. Plaintiff also complains that Section 21-3604(1)(d) "prohibits the City from providing a 'notice of release' for purposes of civil immigration law enforcement." Am. Compl. ¶ 96. But a notice of *release* is not a request for an individual's *immigration status*, so once again, there is no conflict between the Challenged Ordinance and federal law. *See Cnty. of Ocean v. Grewal*, 475 F. Supp. 3d 355, 376 (D.N.J. 2020), *aff'd*, 8 F.4th 176 (3d Cir. 2021) ("There is simply nothing in the statute to suggest that the inclusion of the word 'regarding' requires States and local governments to share personal identifying information and *dates of release from detention*, as such information does not directly relate to, or regard, an individual's immigration status" (emphasis added)); *Steinle v. City & Cnty.*

*of San Francisco*, 230 F. Supp. 3d 994, 1015 (N.D. Cal. 2017), *aff'd*, 919 F.3d 1154 (9th Cir. 2019) ("Nothing in 8 U.S.C. § 1373(a) addresses information concerning an *inmate's release date*." (emphasis added)). What is more, the Challenged Ordinance contains a savings clause, which preserves the City's ability to share information regarding immigration status when doing so is "mandatory." *See* Am. Compl. Ex. A, § 21-3604(16).

Because Sections 1373 and 1644 do not constitute preemption provisions and, in any event, do not conflict with Section 21-3604(4), the Court should dismiss Count I.

### 3. Count II Should Be Dismissed Because the Challenged Ordinance Is Not Conflict Preempted.

Plaintiff's assertion in Count II that the Challenged Ordinance is conflict preempted by certain provisions of the INA and an implementing regulation similarly fails. *See* Am. Compl. ¶¶ 101-04. Those provisions include: (1) provisions about state and local cooperation in federal immigration law enforcement operations, *see* 8 U.S.C. §§ 1373, 1644, Am. Compl. ¶ 104; (2) provisions prescribing federal officials' and immigration agents' duties and authorities, *see* 8 U.S.C. §§ 1103(a)(3), 1225(d)(4), 1226(a) & (c), 1231(a), 1357(d) and 8 C.F.R. § 287.7, Am. Compl. ¶¶ 101, 104; and (3) a provision that criminalizes obstructing federal immigration law enforcement operations, *see* 8 U.S.C. § 1324(a)(1)(A)(ii), Am. Compl. ¶ 102.

As a preliminary matter, nearly all of these provisions cannot support preemption because, as explained above, they do not regulate private actors.[4] *See supra* Section III.2. *See also United States v. Minnesota*, No. 25-CV-3798 (ECT/JFD), 2026 WL 2085701, at *19 (D. Minn. July 20,

---

[4] The only exception is 8 U.S.C.A. § 1324(a)(1)(A)(ii), which provides for criminal liability for a "person who" "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law[.]"

2026) (holding 8 U.S.C. § 1357(g) and 8 C.F.R. § 287.7 do not regulate "private actors"). That is fatal to any type of preemption claim, including one based on conflict preemption. *See Ocean Cnty.*, 8 F.4th at 181-82.

Further, even assuming that the provisions did apply to private actors, Plaintiffs do not plausibly state a claim for conflict preemption. "[C]onflict preemption is a form of implied preemption." *Transcon. Gas Pipe Line Co., LLC v. Pa. Env't Hearing Bd.*, 108 F.4th 144, 158 (3d Cir. 2024). Implied conflict preemption arises only "where it is impossible for a private party to comply with both state and federal law," *MD Mall Assocs. v. CSX Transp.*, 715 F.3d 479, 495 (3d Cir. 2013), or where the state law poses an obstacle to the full effectuation of a federal statute's "text and structure," *Kansas v. Garcia*, 589 U.S. 191, 208 (2020). Plaintiff has a "high threshold" to meet in arguing that the Challenged Ordinance is impliedly preempted for "conflicting with the purposes" of a federal law or regulation. *See Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 607 (2011). As the Supreme Court has held, conflict-preemption analysis "does not justify a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives; such an endeavor would undercut the principle that it is Congress rather than the courts that pre-empts state law." *Id.*

Here, Plaintiff does not (and cannot) allege that it is "impossible" for anyone "to comply with both state and federal law," so it necessarily proceeds under a theory of obstacle preemption. Plaintiff cannot carry its burden. It argues that the Challenged Ordinance stands as an obstacle to "general federal immigration enforcement efforts." Am. Compl. ¶ 104. But Plaintiff does not identify any plausible conflict between the statutory and regulatory provisions on which it relies and the Challenged Ordinance.

*First*, Section 21-3604(4) does not pose an obstacle with respect to the INA provisions about state and local cooperation in federal immigration enforcement. As explained above, Sections 1373 and 1644 govern the sharing of information about an individual's immigration status and thus do not conflict with Section 21-3604(4)'s directive to refuse immigration detainer requests or administrative warrants. *See supra* Section III.2.

*Second*, none of the INA provisions outlining the duties and authority of federal officers and immigration agents support preemption either. Several provisions merely explain the authority of high-ranking federal officials. *See* 8 U.S.C. § 1103(a)(3) (describing the authority of the Secretary of Homeland Security); 8 U.S.C. § 1225(d)(4) (describing the subpoena authority of the Attorney General and immigration officers regarding witness testimony and the production of documents). One provision explains which noncitizens should be detained or removed and when, which is inapposite to the issue whether a local government can refuse to comply with an immigration detainer request. 8 U.S.C. § 1231(a). And the remaining provisions cited by Plaintiff simply allow federal agents to issue immigration detainers asking state and local governments to maintain custody over noncitizens who would otherwise be released. *See* 8 U.S.C. §§ 1226(a) & (c) (describing Attorney General's authority to issue a warrant for the detention of noncitizens and issue a detainer for certain noncitizens); 8 U.S.C. § 1357(d) (allowing an arresting official (whether federal, state, or local) to *request* that the federal government determine whether to issue a detainer); 8 C.F.R. § 287.7 (authorizing certain federal officers to issue detainers).

Contrary to Plaintiff's characterization of the INA (and its implementing regulations), courts have uniformly held that none of the INA's provisions *mandate* compliance with an immigration detainer request or an administrative warrant. *See, e.g.*, *Illinois*, 796 F. Supp. 3d at 528-29 (holding that policy "prohibiting compliance with administrative warrants and immigration

detainers" did "not pose an obstacle to the INA," reasoning that "no provision of the INA requires a State to take any action in response to one"); *California*, 921 F.3d at 887 (holding that a state law barring compliance with detainer requests "does not directly conflict with any obligations that the INA or other federal statutes impose on state or local governments, because federal law does not actually mandate any state action"); *Cnty. of Washtenaw*, 2026 WL 2453724, at *15 (similar); *Sherrill*, 2026 WL 2621025, at *9 (holding "8 U.S.C. § 1226(c), § 1231(a), and its corresponding regulations cannot serve as a basis for conflict preemption").

Plaintiff places significant weight on 8 C.F.R. § 287.7, but that regulation merely defines an immigration officer's authority to issue an immigration detainer *request*. *See* 8 C.F.R. § 287.7(a) ("The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible."). As the Third Circuit has explained, "[a] detainer is a *request*, not a *demand*"; compliance is thus permissive, not mandatory. *See City of Phila. v. Att'y Gen. of United States*, 916 F.3d 276, 281 (3d Cir. 2019) (citing 8 C.F.R. § 287.7). *See also Galarza v. Szalczyk*, 745 F.3d 634, 639-45, 642 n.9 (3d Cir. 2014) (observing that "no U.S. Court of Appeals has ever described [immigration] detainers as anything but requests" and agreeing with that interpretation of § 287.7(d)); *Cnty. of Washtenaw*, 2026 WL 2453724, at *15 (similar); *Minnesota*, 2026 WL 2085701, at *17 (rejecting conflict preemption claim based on 8 C.F.R. § 287.7, reasoning that this provision "say[s] enforcement agreements and immigration detainers issued to local agencies are respectively options and requests, not mandates"; citing numerous cases holding the same).

Accordingly, nothing in Section 287.7, or any other INA provision cited by Plaintiff, prohibits a state or local government from refusing to respond to an immigration detainer request,

as the Challenged Ordinance has done on behalf of the City of Philadelphia. The Ninth Circuit's reasoning in a decision affirming the dismissal of a nearly identical conflict-preemption claim is equally applicable here:

> California's decision not to assist federal immigration enforcement in its endeavors is not an 'obstacle' to that enforcement effort. [The United States'] argument that SB 54 makes immigration enforcement far more burdensome begs the question: more burdensome than what? The laws make enforcement more burdensome than it would be if state and local law enforcement provided immigration officers with their assistance. *But refusing to help is not the same as impeding*. If such were the rule, obstacle preemption could be used to commandeer state resources and subvert Tenth Amendment principles.

*California*, 921 F.3d at 888. *See also Illinois*, 796 F. Supp. 3d at 529 ("Declining an option offered by a federal statute cannot create a conflict for preemption purposes.").

*Third*, Plaintiff's argument that 8 U.S.C. § 1324(a)(1)(A)(ii) preempts Section 21-3604(4) also lacks merit. Plaintiff makes no effort to explain how a provision that criminalizes the transport of unauthorized noncitizens preempts Section 21-3604(4)'s pronouncement of a policy to decline immigration detainer requests. Courts have rejected similar efforts by Plaintiff to argue that Section 1324(a) preempts state and local laws without any meaningful explanation as to how. *See, e.g.*, *Cnty. of Washtenaw*, 2026 WL 2453724, at *17 (rejecting that 8 U.S.C. § 1324(a) had preemptive effect over policy against honoring detainers where that "portion of the [INA] is simply cited, but is not meaningfully applied to the facts of this case"); *Illinois*, 796 F. Supp. 3d at 530 n.19 (dismissing "unsupported" assertion that a state's challenged sanctuary policy constitutes "harboring" under 8 U.S.C. § 1324(a)(1)(A)(iii)). This Court should hold the same here.

In sum, Plaintiff fails to carry its burden to show that it was "the clear and manifest purpose of Congress" to preempt local laws like Section 21-3604(4). *See Arizona v. United States*, 567 U.S. 387, 400 (2012). It cannot point to any federal law mandating that state or local officials assist with "general federal immigration enforcement efforts." Am. Compl. ¶ 104. That should come as

no surprise because any such law would run afoul of the Tenth Amendment's anticommandeering principle. *See Galarza*, 745 F.3d at 642-43 & n.9; *New York*, 810 F. Supp. 3d at 350. This Court should not countenance Plaintiff's efforts to read into the provisions of the INA (and its implementing regulations) a requirement that would plainly violate the Constitution. *See Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208, 223 (3d Cir. 2018) (noting it is a "cardinal principle of statutory interpretation . . . that when an Act of Congress raises a serious doubt as to its constitutionality, . . . courts will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided."). Count II should thus be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant its Motion to Dismiss Counts I and II in the Amended Complaint with prejudice.

Dated: September 22, 2026

**BALLARD SPAHR LLP**

*/s/ David L. Axelrod*
David L. Axelrod, ID 323792
Facundo Bouzat, ID 335101
J. Chesley Burruss, ID 331521
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215.665.8500
Facsimile: 215.864.8999
axelrodd@ballardspahr.com
bouzatf@ballardspahr.com
burrussc@ballardspahr.com

*Attorneys for Defendants*