**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE UNITED STATES OF AMERICA,** *Plaintiff,* | : | |
| **v.** | : | **CIVIL NO. 26-4208** |
| **CITY OF PHILADELPHIA, et al.,** *Defendants.* | : | |

**MEMORANDUM**

**KENNEY, J.** **NOVEMBER 5, 2026**

Before the Court is Defendants' Motion to Dismiss Counts I and II in the Amended Complaint (the "Motion") (ECF No. 37). The United States opposes dismissal. *See* ECF No. 39.

## I. BACKGROUND

### A. Philadelphia City Council Bill No. 260059

On April 23, 2026, the Philadelphia City Council enacted a package of seven bills, also "known as the 'ICE Out' legislation." ECF No. 32 ¶ 1. As relevant to Defendants' Motion, the United States asserts a challenge to a provision in Bill No. 260059 ("Bill 260059"), which was signed by Defendant Mayor Cherelle Parker on May 7, 2026, and codified at Title 21, § 21-3706 of the Philadelphia Code ("§ 21-3706"). *Id.* ¶¶ 3, 33–34; *see also* ECF No. 32-1 at 2–8.[1] § 21-3706 is titled "Prohibition of Immigration Enforcement Including 287(g) Agreements." Specifically, the United States challenges § 21-3706(4), which states:

> No City agency, official, or employee shall stop, arrest, detain, or continue to detain a person after that person becomes eligible for release from custody or would otherwise be free to leave an encounter with an agency, official, or employee, based on any of the following:

[1] Although Bill 260059 states that it would be codified at § 21-3604 of the Philadelphia Code, *see* ECF No. 32-1 at 2, it was later codified at § 21-3706. *See* ECF No. 32 ¶ 34 & n.4. Accordingly, the Court refers to the renumbered sections.

> (a) An immigration detainer;
>
> (b) An administrative warrant; or
>
> (c) Information or suspicion that a person is not present legally in the United States, or that the person has committed an immigration violation, or suspicion of violating 8 U.S.C. §§ 1253, 1304(c), 1306(a) and (b), 1325, and 1326.

*See* PHILA. CODE § 21-3706(4). Notwithstanding this prohibition, Bill 260059 contains a savings clause, which provides: "(a) [n]othing in this Chapter shall prohibit City Agencies or Employees from cooperating with federal authorities in the investigation or prosecution of criminal activity when required by law[;]" and "(b) [n]othing in this Chapter shall be construed to restrict compliance with federal or state law where such compliance is mandatory." *Id.* § 21-3706(16)(a)–(b). In addition, Bill 260059 defines an "Immigration Detainer Request" as "[a] request by a federal immigration enforcement agent to a federal, state, or local law enforcement agency that the law enforcement agency provide notice of release or maintain custody of an individual for purposes of civil immigration law enforcement[.]" *Id.* § 21-3706(1)(d).

**B. Procedural History**

On June 18, 2026, the United States filed a Complaint in the U.S. District Court for the Eastern District of Pennsylvania. *See* ECF No. 1. In its Complaint, the United States raised Supremacy Clause challenges to Section 2, § 10-843, § 10-844, § 10-845, § 10-846 of Philadelphia City Council Bill No. 260060 ("Bill 260060"), which was also part of the "ICE Out" legislation package. *See id.* ¶¶ 81–111. That same day, the United States filed a Motion for a Preliminary Injunction. *See* ECF No. 3. On July 2, 2026, the Court granted the United States' Motion for a Preliminary Injunction and preliminarily enjoined Defendants, the Defendants' officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation

with any of the Defendants, from implementing or enforcing Section 2, § 10-843, § 10-844, § 10-845, § 10-846 of Bill 260060 as to federal agencies and officers. *See United States v. City of Phila.*, 838 F. Supp. 3d 436, 441, 456 (E.D. Pa. 2026).

On August 3, 2026, Defendant District Attorney Lawrence Krasner filed an Answer to Plaintiff's Complaint. *See* ECF No. 30. On August 21, 2026, Defendants the City of Philadelphia, Mayor Cherelle Parker, and former City Solicitor Renee Garcia filed their Answer. *See* ECF No. 31.[2] A few days later, on August 24, 2026, the United States filed an Amended Complaint. *See* ECF No. 32. In its Amended Complaint, the United States adds two causes of action for violations of the Supremacy Clause and the Immigration and Nationality Act ("INA"). *See id.* ¶¶ 93–106. In Count I, the United States alleges that § 21-3706(4) is "expressly preempted by 8 U.S.C. §§ 1373, 1644." *Id.* ¶ 97. In Count II, the United States alleges that § 21-3706(4) is also subject to conflict preemption based on a variety of statutes and regulations, including 8 U.S.C. §§ 1373, 1644, among others. *Id.* ¶¶ 100–06.

On September 22, 2026, Defendants moved to dismiss Counts I and II from the Amended Complaint. *See* ECF No. 37.[3] The United States filed an Opposition to Defendants' Motion to Dismiss on October 6, 2026, *see* ECF No. 39, and Defendants filed a Reply in Support of their Motion to Dismiss Counts I and II in the Amended Complaint on October 13, 2026, *see* ECF No. 40. On October 15, 2026, the Court held oral argument on Defendants' Motion. *See* ECF Nos. 41–42.

---

[2] Since the filing of the United States' Complaint, Monique Myatt Galloway has replaced Renee Garcia as City Solicitor and is substituted accordingly as a Defendant. *See* ECF No. 37 at 1 n.1; *see also* Fed. R. Civ. P. 25(d).

[3] Although Defendants did not specify the grounds for dismissal, the Court construes their Motion as seeking dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). *See* ECF No. 37-1 at 5 n.2; *see also* ECF No. 39 at 14.

Defendants' Motion is fully briefed and before the Court.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion tests the sufficiency of a complaint. When evaluating a motion to dismiss for failure to state a claim, the Court must "accept all factual allegations as true, [and] construe the complaint in the light most favorable to the plaintiff." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (internal quotations and citation omitted). Conclusory allegations "are not entitled to the assumption of truth." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citation omitted). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's well-pleaded complaint must state a "plausible entitlement to relief[,]" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 559 (2007). While a plaintiff need not plead "detailed factual allegations," Rule 8(a)(2) necessitates "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Put another way, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of the plaintiff's claims. *Connelly*, 809 F.3d at 789 (internal quotations and citation omitted); *see also Oxford House, Inc. v. Twp. of N. Bergen*, 158 F.4th 486, 491 (3d Cir. 2025) ("At the motion to dismiss stage, [t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." (internal quotations and citation omitted)).

When determining a Rule 12(b)(6) motion, district courts "must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol.*

*Indus., Inc.*, 998 F.2d 1192, 1996 (3d Cir. 1993)). Courts may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490 (3d Cir. 2016) (internal quotations and citation omitted).

## III. DISCUSSION

Defendants have moved to dismiss Counts I and II on the basis that the United States has failed to state a claim for express and conflict preemption. *See* ECF No. 37. For the following reasons, the Court will grant Defendants' Motion and dismiss Counts I and II in the Amended Complaint with prejudice.

### A. Principles of Preemption

The Supremacy Clause provides that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land[.]" U.S. Const. art. VI, cl. 2. Preemption is rooted in the Supremacy Clause and "provides 'a rule of decision[;]' . . . [i]t specifies that federal law is supreme in case of a conflict with state law." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 477 (2018) (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015)). The federal government's power to preempt state law "is an extraordinary power" and one that a court "must assume Congress does not exercise lightly." *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). There are three types of preemption that have developed through case law: express, conflict, and field preemption. *Murphy*, 584 U.S. at 477. All three types generally "work in the same way: Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence and the state law is preempted." *Id.*

In order for a federal statute "to preempt state law, it must satisfy two requirements." *Id.* First, the provision "must represent the exercise of a power conferred on Congress by the Constitution; pointing to the Supremacy Clause will not do." *Id.* "Second, since the Constitution confers upon Congress the power to regulate individuals, not States, . . . the [federal] provision at issue must be best read as one that regulates private actors." *Id.* (internal quotations and citation omitted). It is well-settled that "[i]nvoking some brooding federal interest . . . should never be enough to win preemption of a state law; a litigant must point specifically to a constitutional text or a federal statute that does the displacing or conflicts with state law." *Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019) (internal quotations and citation omitted); *see also Kansas v. Garcia*, 589 U.S. 191, 202 (2020) ("There is no federal preemption *in vacuo*, without a constitutional text, federal statute, or treaty made under the authority of the United States." (internal quotations and citation omitted)).

In preemption cases, courts are also instructed to "'start[] with the basic assumption that Congress did not intend to displace state law[,]'" *see Farina v. Nokia Inc.*, 625 F.3d 97, 116 (3d Cir. 2010) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)), which is also referred to as the "presumption against pre-emption." *Wyeth v. Levine*, 555 U.S. 555, 565 n.3 (2009). This presumption is applicable "in fields within the police power of the state, . . . but does not apply where state regulation has traditionally been absent[.]" *Farina*, 625 F.3d at 116 (citations omitted); *see also Arizona v. United States*, 567 U.S. 387, 400 (2012) (explaining that "courts should assume that the historic police powers of the States are not superseded unless that was the clear and manifest purpose of Congress" (internal quotations and citation omitted)); *United States v. Locke*, 529 U.S. 89, 108 (2000) ("[A]n 'assumption' of nonpre-emption is not triggered when the State regulates in an area where there has been a history of significant federal presence."). Federal

immigration enforcement sits within this latter category of areas in which "state regulation has traditionally been absent[.]" *Farina*, 625 F.3d at 116 (citation omitted); *see also Iowa Migrant Movement for Justice v. Bird*, 157 F.4th 904, 919 (8th Cir. 2025) (explaining that "immigration is not a traditional subject of state regulation" and, "[t]o the contrary, the Supreme Court has 'long recognized the preeminent role of the Federal Government with respect to the regulation of aliens within our borders'" (quoting *Toll v. Moreno*, 458 U.S. 1, 10 (1982))); *cf. Lozano v. City of Hazleton*, 724 F.3d 297, 314 n.23 (3d Cir. 2013) (discussing housing provisions that "attempt to regulate who may live within Hazleton based solely on immigration status[,]" noting that immigration is an "area of 'significant federal presence[,]'" and refusing to "apply the presumption against pre-emption" (quoting *Locke*, 529 U.S. at 108)). Accordingly, the Court assumes that the presumption against preemption does not apply here. *See United States v. Minnesota*, No. 25-cv-3798, --- F. Supp. 3d ----, 2026 WL 2085701, at *14 (D. Minn. July 20, 2026) (finding that the "non-preemption assumption does not apply" in a similar context).

**B. Express Preemption**

The Court begins with express preemption. "Express preemption requires an explicit statement of federal law that announces and defines the scope of displaced state regulation." *Transcon. Gas Pipe Line Co., LLC v. Pa. Env't Hearing Bd.*, 108 F.4th 144, 151 (3d Cir. 2024) (collecting cases), *amended on denial of reh'g*, 110 F.4th 612 (3d Cir. 2024); *see also Farina*, 625 F.3d at 115 ("Express preemption applies where Congress, through a statute's express language, declares its intent to displace state law.").

In Count I of its Amended Complaint, the United States contends that § 21-3706(4) is expressly preempted by 8 U.S.C. §§ 1373 and 1644. *See* ECF No. 32 ¶¶ 93–97. In resolving whether the United States has stated a claim for express preemption, this Court need look no further

than *Ocean County Board of Commissioners v. Attorney General of the State of New Jersey*, 8 F.4th 176 (3d Cir. 2021) [hereinafter *Ocean County* or *Ocean Cnty.*]. In *Ocean County*, the Third Circuit explicitly held that 8 U.S.C. §§ 1373 and 1644 "cannot be fairly read to regulate" private actors; rather, both provisions only "regulate[] states." *Id.* at 182. Here, the Third Circuit's "conclusion that neither § 1373 nor § 1644 regulates private actors is fatal to" the United States' argument that these provisions "preempt" § 21-3706(4) because "[a] federal statute that does not regulate private actors cannot serve as a basis for preemption." *Id.* Accordingly, Count I of the Amended Complaint "must fail" in light of the *Ocean County* Court's holding. *Id.*; *see also Murphy*, 584 U.S. at 477.

In an attempt to fend off this conclusion, the United States raises a few arguments, all of which miss their mark. First, the United States argues that this Court should not place any reliance on *Ocean County* because it is "wrongly decided." ECF No. 39 at 20. But *Ocean County* is a precedential opinion and is, therefore, binding authority on this Court, as the United States conceded at oral argument. *See* ECF No. 42 at 9:17–18; *id.* at 21:18–20. Accordingly, it is not within this Court's purview to determine whether that case is "wrongly decided." ECF No. 39 at 20; *see also Reilly v. City of Harrisburg*, 858 F.3d 173, 177 (3d Cir. 2017) (explaining that Third Circuit "en banc consideration is required" to "overrule[] the holding in a precedential opinion of a previous panel" (internal quotations and citation omitted)).

Second, the United States argues that "*Ocean County*'s conclusion rested on only a cursory, conclusory treatment of Sections 1373 and 1644, . . . without even considering Section 1373(b), which . . . refers to 'persons.'" ECF No. 39 at 20 (citation omitted). The United States ignores that *Ocean County* did not limit its holding to § 1373(a). To the contrary, the Third Circuit held that § 1373 *as a whole* does not regulate private actors. *See Ocean Cnty.*, 8 F.4th at 182 (holding

that "neither § 1373 nor § 1644 regulates private actors"); *see also United States v. New Jersey*, No. 26-cv-1770, 2026 WL 2621025, at *7 (D.N.J. Sept. 4, 2026) ("As for §§ 1373 and 1644, the Third Circuit has expressly held that because 'neither § 1373 nor § 1644 regulates private actors,' those provisions 'cannot serve as a basis for preemption.'" (quoting *Ocean Cnty.*, 8 F.4th at 178–79, 182)). Moreover, multiple courts have rejected the United States' contention that § 1373(b)'s use of "person" expands the reach of the actors that the statute is intended to regulate. *See, e.g.*, *United States v. Illinois*, 796 F. Supp. 3d 494, 521 n.14 (N.D. Ill. 2025) ("[T]he court finds that § 1373(b) does not regulate private actors for the same reasons that § 1373(a) does not."); *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 868–69 (N.D. Ill. 2018) ("Subsection (b) does not meaningfully expand the statute's scope by including 'person[s]': Who but a government actor can restrict the activities of a government entity or official?"); *City of Phila. v. Sessions*, 309 F. Supp. 3d 289, 329 (E.D. Pa. 2018) ("Given their plain language, neither Section 1373(a) nor Section 1373(b) can be best read as regulating private actors."), *aff'd in part*, *vacated in part*, *City of Phila. v. Att'y Gen. of U.S.*, 916 F.3d 276 (3d Cir. 2019).

Third, regarding 8 U.S.C. § 1644, the United States contends that § 1644 is "broad" given its use of the "passive voice" and thus should be read to regulate private actors. ECF No. 39 at 19. In *Ocean County*, the Third Circuit already considered § 1644's use of the "passive voice," yet nonetheless determined that "the best reading of the provision is that it does not regulate private actors." 8 F.4th at 182. Accordingly, this argument, too, fails.

Ultimately, "regardless of the wisdom" or practical impacts of Defendants' policy of refusing to honor immigration detainer requests, *Ocean County* instructs that § 21-3706(4) is not expressly preempted by either 8 U.S.C. §§ 1373 or 1644 because those federal statutes "regulate only state action." *Id.* Accordingly, the United States has failed to state a claim for express

preemption. *See id.*; *see also Murphy*, 584 U.S. at 477. The Court will, therefore, grant Defendants' Motion and dismiss Count I with prejudice because any amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002) (explaining that dismissal without leave to amend is proper upon a finding that "amendment would be inequitable or futile"); *see also U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 517 (3d Cir. 2007) (explaining that "[r]epleading is futile" in circumstances where "the legal inadequacy cannot be solved by providing a better factual account of the alleged claim").

**C. Conflict Preemption**

The Court turns next to conflict preemption. In addition to expressly preempting a state law, Congress can also impliedly preempt a state law through conflict preemption. *See Transcon. Gas Pipe Line Co., LLC*, 108 F.4th at 158. Under conflict preemption, "when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of a federal law, that rises to the level of a conflict for which preemption may be implied." *Id.* (internal quotations and citations omitted); *see also Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) ("Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law."). Conflict preemption may also be found in "cases where compliance with both federal and state regulations is a physical impossibility." *Arizona*, 567 U.S. at 399 (internal quotations and citation omitted). What constitutes "a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000). "If the purpose of the act cannot otherwise be accomplished—if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect—the state law must yield to the regulation of Congress within the

sphere of its delegated power." *Id.* (internal quotations and citation omitted). However, courts should avoid engaging in a "freewheeling judicial inquiry into whether a state statute is in tension with federal objectives; such an endeavor would undercut the principle that it is Congress rather than the courts that pre-empts state law." *Chamber of Com. v. Whiting*, 563 U.S. 582, 607 (2011) (internal quotations and citation omitted). Indeed, a "high threshold" must be satisfied "if a state law is to be preempted for conflicting with the purposes of a federal Act." *Id.* (internal quotations and citation omitted).

In Count II of its Amended Complaint, the United States contends that § 21-3706(4) is conflict preempted based on a patchwork of statutory and regulatory provisions: 8 U.S.C. §§ 1103(a)(3), 1225(d)(4), 1226(a), 1226(c), 1231(a), 1324(a)(1)(A)(ii), 1357(d), 1373, 1644, and 8 C.F.R. §§ 287, 287.7, 287.7(d). *See* ECF No. 32 ¶¶ 101–04; *see also* ECF No. 37-1 at 14. In its Opposition, the United States identifies additional statutory provisions that purportedly support its position that § 21-3706(4) impermissibly "frustrate[s] the objectives of Congress's scheme." ECF No. 39 at 24 (citing 8 U.S.C. §§ 1182, 1225(a), 1225(d), 1357(a), 1357(g)).

As an initial matter, the United States cannot simply point to "the federal immigration framework" as a whole for the purposes of stating a claim for conflict preemption. *Id.* As discussed above, "[i]nvoking some brooding federal interest" is insufficient to support a finding of preemption. *Va. Uranium, Inc.*, 587 U.S. at 767. The Court will analyze the provisions that the United States has invoked in two batches.

*1. Information Sharing and Detainer Provisions*

First, the United States invokes several provisions that relate to immigration detainer requests, cooperation, and information sharing between the federal government, states, and localities. *See* ECF No. 39 at 24 (citing 8 U.S.C. §§ 1357(a), 1357(d), 1357(g), 1373, 1644, and 8

C.F.R § 287.7); *see also* ECF No. 32 ¶¶ 101, 103–04 (citing 8 U.S.C. §§ 1357(d), 1373, 1644, and 8 C.F.R § 287.7). The United States argues that § 21-3706(4) "poses an obstacle for federal immigration enforcement as it categorically bans compliance with detainers and is thus preempted, as it conflicts with and frustrate[s] the objectives of Congress's scheme." ECF No. 39 at 24. According to the United States, "Congress crafted a statutory scheme that clearly envisioned the Federal Government being able to detain and remove [noncitizens] once their state proceedings and sentences concluded[,]" and "Congress outlawed attempts to 'in any way restrict[]' state officials 'from sending to or receiving from [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States.'" *Id.* at 25 (quoting 8 U.S.C. § 1644).

8 U.S.C. § 1373(a) provides that "a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a). 8 U.S.C. § 1644 contains similar language. *See id.* § 1644. Once again, the United States' reliance on 8 U.S.C. §§ 1373 and 1644 as a basis for conflict preemption is misplaced. The United States faces the same fatal defect as previously articulated: those statutory provisions lack preemptive effect because they are best read as "regulat[ing] only state action[,]" not private actors. *Ocean Cnty.*, 8 F.4th at 182 (finding that 8 U.S.C. §§ 1373 and 1644 "say[] nothing about private actors, so [they] cannot be fairly read to regulate them"). Therefore, § 21-3706(4) is not conflict preempted by 8 U.S.C. §§ 1373 and 1644. *Id.*

Next, the United States contends that 8 U.S.C. § 1357(a), (d), and (g) serve as a basis for conflict preemption. *See* ECF No. 39 at 24. At a high level, § 1357 "specifies immigration-officer functions and describes circumstances under which state and local officers can perform those

functions." *City of El Cenizo v. Texas*, 890 F.3d 164, 177 (5th Cir. 2018). Specifically, § 1357(a) describes the powers that an immigration officer holds to act without a warrant. 8 U.S.C. § 1357(a). § 1357(d) details the circumstances under which an immigration officer should determine whether to issue a detainer for a noncitizen who is arrested for violating a "law relating to controlled substances[.]" *Id.* § 1357(d). And § 1357(g) covers the Attorney General's ability to "enter into a written agreement with a State, or any political subdivision of a State" for qualified individuals "to perform a function of an immigration officer." *See id.* § 1357(g)(1). § 1357(a), (d), and (g) likewise cannot serve as a basis for conflict preemption because these provisions do not regulate private actors. *See New Jersey*, 2026 WL 2621025, at *8 (finding that 8 U.S.C. § 1357(g)(10) cannot serve as a basis for conflict preemption because it "does not regulate private actors" (citing *City of El Cenizo*, 890 F.3d at 178)); *Minnesota*, 2026 WL 2085701, at *19 (finding that 8 U.S.C. § 1357(g) does not "regulate[] private actors"); *cf. United States v. New York*, 810 F. Supp. 3d 329, 350 (N.D.N.Y. 2025) ("Nor does 8 U.S.C. § 1357(g) provide a basis for preemption.").

Finally, the United States invokes 8 C.F.R. § 287.7, which covers immigration officers' authority to issue detainers. *See* ECF No. 39 at 24; 8 C.F.R. § 287.7. A "detainer is a request that [a federal, state, or local law enforcement] agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible." *Id.* § 287.7(a). § 287.7(d) provides that noncitizens who are "not otherwise detained by a criminal justice agency" can only be detained "for a period not to exceed 48 hours . . . to permit assumption of custody by the Department." *Id.* § 287.7(d). These regulatory provisions, too, lack preemptive effect because

they are not best read as regulating private actors. *See Minnesota*, 2026 WL 2085701, at *19 (finding that 8 C.F.R. § 287.7 does not "regulate[] private actors").

Therefore, § 21-3706(4) is not conflict preempted by any of the information sharing and detainer-related provisions that the United States has invoked because none of these provisions regulate private actors. *See Murphy*, 584 U.S. at 477. However, even if these provisions could be read as regulating private actors, the Court would still find that the United States has failed to state a claim for conflict preemption.

8 U.S.C. § 1357 and 8 C.F.R § 287.7 "speak[] in voluntary terms" to the extent that they involve the cooperation of state and local governments. *Cnty. of Ocean v. Grewal*, 475 F. Supp. 3d 355, 362 (D.N.J. 2020), *aff'd*, *Ocean Cnty.*, 8 F.4th 176 (3d Cir. 2021). For example, courts routinely find that compliance with immigration detainer requests is not mandatory for states and localities. *See, e.g.*, *Galarza v. Szalczyk*, 745 F.3d 634, 642 (3d Cir. 2014) (examining 8 C.F.R. § 287.7 and finding that "detainers are not mandatory"); *N.S. v. Dixon*, 141 F.4th 279, 282 (D.C. Cir. 2025) ("[A]n ICE detainer is a 'request,' not an order, for another law enforcement agency to hold a particular alien."); *United States v. Cnty. of Washtenaw*, No. 26-cv-11166, --- F. Supp. 3d ----, 2026 WL 2453724, at *16 (E.D. Mich. Aug. 21, 2026) ("The INA permits cooperation through its detainer 'requests;' it does not mandate compliance." (collecting cases)). Indeed, the Third Circuit has expressly recognized that state and local governments have a "right to refuse [detainer] requests under § 287.7" because "[u]nder the Tenth Amendment, immigration officials may not order state and local officials to imprison suspected aliens subject to removal at the request of the federal government." *Galarza*, 745 F.3d at 643, 645. Therefore, § 21-3706(4)'s prohibition on City of Philadelphia employees detaining individuals who are subject to an immigration detainer

beyond their release date is not conflict preempted by 8 C.F.R. § 287.7 because compliance with an immigration detainer is voluntary.

Nor does 8 U.S.C. § 1357 mandate that states and localities enter into agreements with the federal government to assist with immigration enforcement. *See* 8 U.S.C. § 1357(g)(9) ("Nothing in this subsection shall be construed to require any State or political subdivision of a State to enter into an agreement with the Attorney General under this subsection."); *see also City of El Cenizo*, 890 F.3d at 178 ("Section 1357 does not require cooperation at all."); *Cnty. of Ocean*, 475 F. Supp. 3d at 362, 383 (explaining that "state and local law enforcement agencies may voluntarily enter into [287(g)] agreements" but "there is no requirement that any State or local government enter into any such agreement"); *Minnesota*, 2026 WL 2085701, at *16 (finding that the United States' preemption claims "based on 8 U.S.C. § 1357(g) and 8 C.F.R. § 287.7(d) . . . fail because these provisions are voluntary and cannot carry preemptive force"); *New York*, 810 F. Supp. 3d at 350 (explaining that § 1357(g) "gives the States and local governments the *option* to enter into agreements with federal immigration officials to assist with immigration enforcement" (emphasis added)). Accordingly, "[h]aving determined that § 1357(g) agreements and § 287.7 detainers are not mandatory, it follows that" § 21-3706(4) is "not conflict preempted" by 8 U.S.C. § 1357 or 8 C.F.R. § 287.7. *Minnesota*, 2026 WL 2085701, at *17 (citing *Arizona*, 567 U.S. at 399); *see also New York*, 810 F. Supp. 3d at 350 ("Courts, however, have consistently found that similar state and local policies, which withhold state cooperation for federal immigration enforcement activities, are not preempted by [8 U.S.C. § 1357(g)].").

Furthermore, § 21-3706(4) cannot be fairly read as posing a conflict to the information sharing requirements of 8 U.S.C. §§ 1373 and 1644. The United States argues that the phrase "'information regarding the citizenship or immigration status'" in these provisions is expansive

and "include[s] facts that bear on an individual's citizenship or immigration status," such as "an alien's current address, whether an alien has a social security number, [] an alien's employment status, . . . the alien's custodial status, . . . [and] the date of an alien's release." ECF No. 39 at 23 (citations omitted). According to the United States, § 21-3706(4) is conflict preempted because it prohibits City of Philadelphia employees from sharing this type of information with the federal government in contravention of §§ 1373 and 1644. But the United States' strained reading of that phrase is contrary to the plain language of §§ 1373 and 1644, and has been repeatedly rejected by courts across the country. *See, e.g.*, *United States v. California*, 921 F.3d 865, 877, 891 (9th Cir. 2019) (agreeing with the district court that "the plain meaning of Section 1373 limits its reach to information strictly pertaining to immigration status (i.e. what one's immigration status is) and does not include information like release dates and addresses" (internal quotations and citation omitted)); *Cnty. of Washtenaw*, 2026 WL 2453724, at *10 ("Courts have uniformly held that 'information regarding . . . information status' in § 1373 encompasses only 'an individual's category of presence in the United States—*e.g.*, undocumented, refugee, lawful permanent resident, U.S. citizen.'" (quoting *City of Phila.*, 309 F. Supp. 3d at 333) (collecting cases)); *Cnty. of Ocean*, 475 F. Supp. 3d at 375 ("[A] plain reading of sections 1373(a) and 1644 reflects that the only information that state and local governments are required to share is the legal status—*i.e.*, citizenship or immigration status—of an individual."). Therefore, § 21-3706(4)'s prohibition on honoring detainer requests and sharing release dates does not frustrate §§ 1373 and 1644 because those provisions "apply only to information specifically regarding an individual's immigration or citizenship status." *Id.* at 376. Moreover, City of Philadelphia employees are not prohibited from sharing information with the federal government to the extent that they are required to do so by law. *See* PHILA. CODE § 21-3706(16)(a)–(b).

To be sure, it is foreseeable that § 21-3706(4) may make federal immigration enforcement less efficient because federal immigration officers may be required to track down noncitizens that have been released from state and local custody on their own. But it does not follow that § 21-3706(4) poses an obstacle to the implementation of the provisions that the United States has identified here, or to immigration enforcement as a whole, based on "mere inconvenience." *See Cnty. of Washtenaw*, 2026 WL 2453724, at *16 ("Again, however, ICE cannot just point to some 'brooding' interest in enforcing federal immigration law more efficiently, nor the mere inconvenience of tracking down noncitizens who have been released from local custody, if no relevant statutory text requires that cooperation from local officials."). Accordingly, the Court finds that § 21-3706(4) is not conflict preempted by the information sharing and detainer provisions that the United States has invoked because it does not stand as an obstacle to their implementation.

2. *Other Immigration-Related Provisions*

Second, the United States references other statutory and regulatory provisions related to the duties, obligations, and authority of federal immigration officers, the Attorney General, and the Secretary of the Department of Homeland Security ("DHS") as a basis for conflict preemption. *See* ECF No. 39 at 24 (citing 8 U.S.C. §§ 1182, 1225(a), 1225(d), 1226(a), 1226(c), 1231(a)); *see also* ECF No. 32 ¶¶ 101–02, 104 (citing 8 U.S.C. §§ 1103(a)(3), 1324(a)(1)(A)(ii), 1225(d)(4), and 8 C.F.R. pt. 287). Specifically, 8 U.S.C. § 1103(a)(3) provides the Secretary of DHS with authority to establish regulations for administering and enforcing federal immigration laws. *See* 8 U.S.C. § 1103(a)(3). § 1231(a) relates to the Attorney General's powers with respect to the detention, release, and removal of noncitizens who have been ordered removed. *See id.* § 1231(a). § 1225(a) covers the inspection of certain noncitizens and describes applicants for admission to the United

States. *See id.* § 1225(a). § 1225(d) details the authority that the Attorney General and immigration officers hold in connection with inspections, such as their ability to search vessels that they believe contain noncitizens and to subpoena witnesses. *See id.* § 1225(d). Similarly, § 1226(a) and (c) cover the circumstances under which the Attorney General can arrest, detain, and release certain noncitizens who are "already within our borders[,]" including those with criminal backgrounds. *See Buele Morocho v. Warden Phila. FDC*, 189 F.4th 287, 299 (3d Cir. 2026); *see also* 8 U.S.C. § 1226(a), (c). § 1182 covers the nitty-gritty on inadmissible aliens, including (1) which classes of aliens are ineligible for visas or admissions, and (2) when an immigration officer shall provide a noncitizen with notice of denial of an application for a visa, among many other details. *See id.* § 1182(a)–(b). 8 C.F.R. pt. 287 details the powers and duties that immigration field officers possess. 8 C.F.R. pt. 287. Furthermore, the United States references 8 U.S.C. § 1324(a)(1)(A)(ii), *see* ECF No. 32 ¶ 102, which imposes criminal penalties on "[a]ny person who" transports a noncitizen in "knowing or in reckless disregard of the fact that [the noncitizen] has come to, entered, or remains in the United States in violation of law[.]" 8 U.S.C. § 1324(a)(1)(A)(ii).

The Court need not analyze each and every one of these provisions in detail to determine whether Congress intended that they regulate private actors, especially when the United States has not spilled the ink to do so. Simply put, it is clear to the Court that § 21-3706(4) does not "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of" any of these federal statutory and regulatory provisions. *Transcon. Gas Pipe Line Co., LLC*, 108 F.4th at 158 (internal quotations and citations omitted). To start, the United States does not meaningfully engage with any of these provisions, apply them to the facts of this case, or explain how they specifically preempt § 21-3706(4). Rather, the United States' description of the overall federal immigration landscape and reliance on this batch of provisions is more appropriately characterized

as a gesture toward "some brooding federal interest" in immigration enforcement, which does not suffice for the purposes of conflict preemption. *Va. Uranium, Inc.*, 587 U.S. at 767.

Moreover, § 21-3706(4)'s prohibition on complying with detainer requests has little, if any, overlap with the subject matter and requirements of 8 U.S.C. §§ 1103(a)(3), 1182, 1225(a), 1225(d), 1226(a), 1226(c), 1231(a), 1324(a)(1)(A)(ii), and 8 C.F.R. pt. 287. For instance, there is no indication that City of Philadelphia employees' refusal to honor an immigration detainer request poses an obstacle to the Attorney General's authority to issue a warrant for the arrest and detention of a noncitizen, *see* 8 U.S.C. § 1226(a), to the circumstances under which an immigration officer must provide a noncitizen with notice of a denial of an application for a visa, *see id.* § 1182(b), or to the imposition of criminal penalties for individuals who transport noncitizens, *see id.* § 1324(a)(1)(A)(ii). In addition, many of these provisions, such as §§ 1226 and 1231(a), "impose obligations solely on the federal government" and do not reflect a congressional intent to mandate that state and local governments assist in carrying out the duties prescribed within the provisions. *See Cnty. of Ocean*, 475 F. Supp. 3d at 380 (finding that §§ 1226 and 1231(a)(1) do not require "state and local law enforcement agencies . . . to assist the federal government with carrying out" the obligations described within the provisions, "except as required under sections 1373(a) and 1644, *i.e.*, information sharing"); *see also New Jersey*, 2026 WL 2621025, at *9–10 (finding that "8 U.S.C. § 1226(c), § 1231(a), and its corresponding regulations cannot serve as a basis for conflict preemption[,]" and a "passing reference" to § 1324(a)(1)(A)(iii) did not implicate preemption). This limitation makes sense to avoid running afoul of the anticommandeering doctrine's bar on conscripting states to carry out the work of the federal government. *See Printz v. United States*, 521 U.S. 898, 935 (1997) (holding that Congress cannot "conscript[] the State's officers directly . . . to administer or enforce a federal regulatory program").

In sum, the Court finds that § 21-3706(4) is not conflict preempted by the various statutory and regulatory provisions that the United States has identified because it does not pose a true obstacle to the federal government's execution and enforcement of those provisions. Accordingly, the United States has failed to state a claim for conflict preemption. The Court will grant Defendants' Motion and dismiss Count II with prejudice because any amendment would be futile. *See Grayson*, 293 F.3d at 106; *see also U.S. ex rel. Atkinson*, 473 F.3d at 517.[4]

## IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' Motion (ECF No. 37), and **DISMISS** Counts I and II in the Amended Complaint **WITH PREJUDICE**. Defendants shall file an answer to the remaining Counts in the Amended Complaint. An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**

[4] Because the Court finds that the United States has failed to state a claim for express and conflict preemption, the Court need not address Defendants' argument that the United States' preemption claims violate the anticommandeering doctrine. *See* ECF No. 37-1 at 8–11.